PEOPLE *v.* HURWICH.

1. WITNESSES—CROSS-EXAMINATION—IMPEACHMENT.
    In prosecution for arson in burning paper mill, where one of defendants was Jew and important issue was whether fire would have profited defendants, question on cross-examination of defendants' witness as to his prior statement that two bankruptcies and a fire is Jewish fortune was competent, where inconsistent with testimony.

2. SAME—DISCRETION OF COURT.
    Scope of cross-examination is largely within discretion of court.

3. CRIMINAL LAW—NEW TRIAL.
    Court may order new trial in felony case after time within which defendant may move for new trial as matter of right (3 Comp. Laws 1929, § 17356).

4. SAME—NEWLY-DISCOVERED EVIDENCE—ABUSE OF DISCRETION.
    Denial of motion for new trial, on ground of newly-discovered evidence, based on existence of check which defendants could have produced during trial, *held,* not abuse of discretion.

5. SAME—ARGUMENT OF PROSECUTOR—OBJECTION.
    Error may not be assigned on argument of prosecuting attorney, where no objection thereto was made, or request to charge thereon presented.
    McDONALD, WIEST, and BUTZEL, JJ., dissenting.

Appeal from Berrien; White (Charles E.), J. Submitted January 14, 1932. (Docket No. 194, Calendar No. 35,570.) Decided June 23, 1932. Rehearing denied September 14, 1932.

Maurice L. Hurwich and Claude E. Nicely were convicted of arson. Affirmed.

*Charles W. Gore (Gore & Harvey,* of counsel), for appellant Hurwich.

On necessity of objection to improper argument by prosecuting attorney, see annotation in 46 L. R. A. 642.
On right of court to disregard statute limiting time for motion for new trial, see annotation in 48 A. L. R. 362.

*Graham, Crane & Elliott* and *Stuart B. White,* for appellant Nicely.

*Paul W. Voorhies,* Attorney General, *Edward A. Bilitzke,* Assistant Attorney General, and *Wilbur M. Cunningham,* Prosecuting Attorney (*Harold J. Waples,* of counsel), for the people.

Wiest, J. (*dissenting*). Defendants were convicted of the crime of arson, it being claimed that they engaged their employee, Eugene L. Furkas, to set fire to a paper mill in which they were principal stockholders at St. Joseph. Furkas confessed and testified that, on January 28, 1928, he visited defendants, at South Bend, Indiana, where they resided, to obtain money to pay employees at the paper mill, and, while there, was given a check by defendant Hurwich, and defendants asked him to set fire to the mill, and he did so the next day. Defendants denied asking Furkas to burn the mill, claimed he was not in South Bend on the 28th, but was there on the 26th, and defendant Hurwich, on the 26th, gave him a check to pay the employees, and neither defendant saw him on the 28th. Defendant Nicely claimed he was in the city of Chicago on the 28th.

Counsel for the prosecution contend that no appeal has been perfected. Defendants were convicted November 21, 1930. At that time the code of criminal procedure (3 Comp. Laws 1929, § 17355 *et seq.*) regulated the practice for review by writ of error upon allowance by this court, and gave the trial judge power to extend the time for settlement of a bill of exceptions, not more than three months from the date of the order granting application for a writ of error, with power in this court to grant further time, not beyond one year after judgment. January 1, 1931, this court, by virtue of power vested

therein by the Constitution, art. 7, § 5, and conceded by the legislature (3 Comp. Laws 1929, § 13604), promulgated rules regulating practice and procedure in appeal cases and by Court Rule No. 66 provided that bills of exceptions be settled within 20 days after notice by the clerk of the trial court of the filing of designated subject-matter, or within such further time as the trial court might allow.

Time to settle a bill of exceptions herein was extended by the trial judge, and the bill was settled and signed within the year after verdict. The trial judge had power, under the rule, to extend the time, and, when we allowed the appeal, this court assumed jurisdiction, and the case is before us for review.

Counsel for defendants assign 157 errors, of which few have sufficient merit to call for discussion.

Defendants were evidently men of affairs. The paper mill was a valuable plant, but the business was a losing venture and needed refinancing, which was being endeavored at the time of the fire.

The principal testimony against defendants was given by the self-confessed "fire bug" and one Victor Troyer, who claimed he was asked, along with Furkas, to burn the plant, but took no part in doing so.

We find errors assigned upon the asking of some questions, but no objections made thereto and no rulings thereon by the court. We cannot make review in such instances, for the error, if any, was want of objection by counsel. If counsel had no objection to offer, then they have no error to assign now. A question may carry a harmful imputation or suggestion regardless of an answer thereto, but if it should not be asked it should be objected to and a ruling had for the purpose of review.

At the time of the fire Charles W. McLain was an employee of the Hurwich Iron Company of South

Bend, Indiana. He was called by defendants as a witness at the trial and testified to conversations he had had with Victor Troyer, one of the principal witnesses for the prosecution. On cross-examination he was asked:

"Now, I will ask you if, at that time, you didn't say to Troyer, in substance and effect, that you had told Mr. Schwartz, one of Mr. Hurwich's attorneys, that they were going at this case from the wrong end * * * and that they should assume that Hurwich and Nicely were guilty, because they were guilty as hell and you knew it."

Over objection, the court ruled the question might be answered. The witness answered "No." The question was improper, but, considering the answer, we cannot hold it constituted reversible error.

Defendant Hurwich is a Jew. The assistant attorney general, who was aiding the prosecuting attorney, asked the following question of William Miller, a witness for the defense:

"At about the time you gave Alex DeFields this letter didn't you say to him in substance and effect, 'Hurwich or these people (referring to the St. Joseph Board & Paper Company) are going to go broke,' and that 'two bankruptcies and a fire is a Jewish fortune.' Did you use that language?"

The witness answered: "No, sir."
Counsel for defendants stated:

"Move the answer be stricken out as highly prejudicial to these defendants; especially defendant Nicely; said to a third party and has no connection with defendants in this case; entirely hearsay."

The court ruled: "Let it stand."
Counsel then stated:

"I meant to ask that the question be stricken out. I don't care about the answer."

The court made no further ruling.

The question was improper, called for a conversation between the witness and a third party, and, if ever uttered, was wholly inadmissible. The asking of it served as a means to convey to the minds of the jurors a senile cackle of slapstick days with prejudicial effect if not of purpose. There was no excuse for asking the question, and it should have been stricken from the record, counsel admonished, and its poisonous effect purged by instant instruction accomplishing such end.

The verdict was rendered November 21; 1930.

In his closing argument to the jury the prosecuting attorney stated:

"Thank God for such women as Miss Kinnamon. I tell you it takes courage to do what that girl did in this case. Down there among a bunch of criminals—that is the best you can say for them. Perjurers and liars, and that is mild! They are going to beat this case and they don't care how; they are willing to manufacture evidence; they are willing to fabricate alibis."

While this is assigned as error, we find no objection made, and we must, therefore, pass it, but not without stating that it is not within the office of an attorney to indulge in such invective.

At the trial defendant Hurwich was unable to produce the check he claimed was given to Furkas on the 26th, and Furkas claimed was given him on the 28th, of January, 1928. In the argument to the jury the prosecutor stated:

"There is one perfect defense in this case; one perfect defense. You remember, Furkas said the

time of the conspiracy in Nicely's office Hurwich gave him a check to have cashed so he could pay the wages of the men at the St. Joe, plant. The defense has brought in stubs of the Hurwich Iron Company. They are stubs of the Hurwich Iron Company. They brought those in and brought in some checks. They did that to show there was no check written to Hurwich in that book on the 28th. Of course there wasn't because this check was given at Nicely's office and not at Hurwich's office. Hurwich wouldn't be carrying that big book with all those checks around in his pocket. There was never any question there. One of the defense attorneys started to misquote the evidence—this meeting in which the conspiracy took place, took place at Nicely's office and nowhere else, and the testimony all along has been that way; therefore it couldn't have been one of those. It was his personal check. That is the check book that Hurwich would have in his pocket and that is the check he gave, a personal check. Why don't they bring in the same books on his personal account. If they had brought in the same thing on his personal account and we had been unable to find a check numbered numerically, no missing check, wouldn't that have been a defense? If we couldn't find a check written in on that date, wouldn't that have been a fine defense? Now do you believe that wasn't thought of by these five attorneys. They thought of it, but why didn't they bring it in? I'll tell you why. They didn't dare, because that check was in existence! We couldn't get it, of course. Those checks were asked for. Did they bring them in? Not on your life, because they would have had to do one of two things if they brought in this check. That would have convicted them and you know it. That is the biggest point in this case. Alibis manufactured! They could do that by not bringing into this court the stubs on his personal account and checks of his personal account. That would have

given you something to work on. You are entitled to all the evidence in this case and you didn't get that and didn't get it because if it had been brought in it would have been the most damaging thing against them that could be obtained. Schwartz says there was no such check written. Why ·didn't they bring their stubs in their numbers as of that date? He wasn't testifying; I wouldn't take his word for it. You have a right to have those things produced here and when they don't produce them, you are the only judge and govern yourselves accordingly. I don't believe you are going to allow this arson gang to come into this court and buy their way out with perjured testimony."

Motion for a new trial was filed December 10th, and denied December 15, 1930. December 29, 1930, by motion, the court was requested to extend the time for presenting a motion for a new trial, accompanied by the proposed motion showing newly-discovered facts, having an important bearing upon the quoted argument of the prosecuting attorney. Objections and counter affidavits were filed. The court refused to extend the time or to entertain the motion because the statute (3 Comp. Laws 1929, § 17356) provides that:

"Motions for new trials shall be made within thirty days after verdict, and not afterwards," and there was no discretion vested in the court.

We have held that *right* to move for a new trial in a criminal case must be exercised within 30 days under the mentioned statute. *People* v. *Wilson,* 246 Mich. 282; *People* v. *Smith,* 252 Mich. 4. Defendants here asserted no such *right,* but requested the court for *leave* to move for a new trial, and tendered the motion. It is true that the right to move for a new trial had expired, but the inherent power of the

court to permit the motion to be made remained, to be exercised, however, within sound discretion. In refusing to consider the request for leave to make the motion the court was in error in not exercising discretionary power. Had the court, upon due consideration, exercised discretion and have denied the request for leave, review here would be limited to determination of whether there was an abuse of discretion. But refusal to consider the matter at all operated in denial of leave and of the motion and no discretion having been exercised, as should have been done, and the full record being before us, we need only say, as we shall point out, that leave to make the motion should have been granted, and the motion heard and granted. The discovered matter set up in the mentioned motion, and with which we are now concerned, related to facts directly bearing upon the argument of the prosecuting attorney quoted above. It appears from the showing in support of the motion and the counter showing that Miss Kinnamon, an employee of defendant Hurwich, abstracted the mentioned check from the office and carried it to the prosecuting officers who examined it during the trial, and, therefore, knew of its existence. Upon this we quote from the affidavit of the prosecuting attorney:

"Deponent further says that during the trial of the above-named cause, Mr. Allen or Mr. Troyer brought to deponent's office in the city of Benton Harbor, a check for $120 dated January 26, 1928, payable to the St. Joseph Board & Paper Company signed by M. L. Hurwich and indorsed St. Joseph Board & Paper Company, per Eugene Furkas, and indorsed by Goodman & Goldbaum of Benton Harbor, Michigan, which check was shown to deponent in the presence of Mr. Troyer, Mr. Waples, Mr. Allen and Mr. Furkas, and the attention of Mr.

Furkas was called to the fact that the check was dated January 26th instead of January 28th, and the said Furkas was asked if he could be mistaken about the date, to which the said Furkas replied in substance that 'he' referring to Maurice Hurwich, 'was too smart for us,' and that the said Hurwich had dated the check on the 26th in order to make it appear that the conspiracy occurred on the 26th instead of the 28th, and that the said Furkas insisted that the conspiracy occurred on the 28th as he had already testified in the above-named suit.

"Deponent further says that Allen on the occasion never told Furkas that he did not want to use the check at all, 'that it would probably hurt their case,' but deponent says that Mr. Waples and this deponent insisted that the check be returned to the files of the Hurwich Iron Company even though the check showed conclusively that Furkas obtained that sum of money as he had testified."

We also quote from the affidavit of Charles B. Allen, deputy State fire marshal:

"Deponent further says that while the trial was in progress, Miss Edna Kinnamon at a meeting in Berrien Springs, Michigan, handed Mr. Troyer a check dated January 26, 1928, drawn on the American Trust Company at South Bend, Indiana, for $120, payable to the order of the St. Joseph Board & Paper Company and indorsed St. Joseph Board & Paper Company by Eugene Furkas, and again indorsed by Goodman & Goldbaum, and marked paid by the American Trust Company, on February 1, 1928, which check was shown to Mr. Waples and Mr. Cunningham at the office of Mr. Cunningham late one night during the trial; that either Mr. Cunningham or Mr. Waples noticed the date of the check and called the attention to (of) Mr. Furkas to the fact that it was the 26th and asked him if he could be mistaken about his testimony, to which he re-

plied 'They were too smart for us and Hurwich dated the check back on purpose,' and Mr. Waples or Mr. Cunningham made the remark that they did not want to use any information obtained in that manner although it would strengthen the people's case, and instructed this deponent and Mr. Troyer to return the check to Miss Kinnamon and have her replace it in the records of Mr. Hurwich, and this deponent gave the check to Mr. Troyer and Mr. Troyer gave the check to Miss Kinnamon and instructed her to place the check back where she obtained it, in Hurwich's office.''

The affidavit of Miss Kinnamon also accompanied the counter showing, but made no mention of the check or taking it to the prosecuting officers or what she did with it thereafter.

In support of the motion was the affidavit of Mr. Furkas recanting his testimony at the trial, and stating that, during the trial, Miss Kinnamon told him that she had destroyed the check. It was evidently through Furkas that the attorneys for defendants learned that the prosecuting officers had seen the questioned check.

Considering the mentioned argument of the prosecuting attorney and the showing in support of leave to move for a new trial, the court should not only have entertained the motion but have granted a new trial. The importance of the check as a decisive factor, argued by the prosecutor to the jury, cannot now be minimized by claim that it was of little moment, considering the other evidence.

Judgment should be reversed, and new trial granted.

McDonald and Butzel, JJ., concurred with Wiest, J.

FEAD, J. I do not agree with Mr. Justice WIEST that the record presents reversible error.

I agree that the question asked of witness Miller, quoted by Mr. Justice WIEST, should not have been propounded. Miller's testimony was not so important as to justify the people in hazarding possible arousal of racial prejudice and consequent reversible error. But the question was competent as a prior inconsistent statement of the witness, as is made apparent by its setting.

An important issue was whether a fire would have profited defendants. There was considerable evidence that the business was a losing venture, with little hope of success. Miller was chief engineer, and the general effect of his testimony was that defendants were particularly zealous in guarding against fire, and that prospects for the plant were favorable.

The question was in direct impeachment of Miller's claim. Miller had left the employ of defendants about January 1st and claimed it was to better his condition, not because of depressed condition of the business. In December he had given another engineer, DeFields, a letter of recommendation to obtain a new position. On cross-examination he testified:

"I do not remember that I told Alex DeFields shortly before I left the St. Joseph Board & Paper Company that things were getting in such bad shape that he had better look around and get himself a new job. I might have told Alex DeFields I was looking for another job. I know he came to South Bend with me later. I do not remember that I gave him a letter of recommendation but if he asked me for one I certainly did.

"*Q.* I ask you to read Exhibit 30.

"*A.* Yes, sir, I wrote that letter. It was a letter of recommendation for Alex DeFields.

"*Q.* You used this remark did you not? 'He leaves the employ of this company through no fault of his, but due to business depression.' That is correct?

"*A.* Yes, sir, that was temporarily a business depression. The latter part of the time I was there I took care of the mill at night to keep it from freezing up.

"*Q.* At about the time you gave Alex DeFields this letter didn't you say to him in substance and effect 'Hurwich or these people (referring to the St. Joseph Board & Paper Company) are going to go broke,' and that 'two bankruptcies and a fire is a Jewish fortune.' Did you use that language?

"*A.* No, sir."

The scope of cross-examination is largely within the discretion of the court, the record does not indicate that the question was asked in bad faith nor that it affected the verdict, and, as the question was competent, it cannot be held reversible error.

I agree with Mr. Justice WIEST that the court may order a new trial in a felony case after the time within which the defendant may move for a new trial as a matter of right, under 3 Comp. Laws 1929, § 17356. *Nichols* v. *Houghton Circuit Judge,* 185 Mich. 654 (Ann. Cas. 1917D, 100), construed 3 Comp. Laws 1915, § 15836, which reads:

"The court in which the trial of any indictment shall be had, may, *at the same term, or at the next term thereafter, on the motion in writing of the defendant,* grant a new trial, for any cause, for which by law a new trial may be granted, or when it shall appear to the court that justice has not been done, and on such terms or conditions as the court shall direct."

The section was adopted verbatim into the code of criminal procedure, 3 Comp. Laws 1929, § 17355, with the italicized words eliminated.

The next section (section 17356) provides:

"Motions for new trials shall be made within thirty days after verdict, and not afterward."

In so modifying and dividing the provisions for new trial, the legislature undoubtedly had in mind the *Nichols Case* and intended to confer on the court the power to order new trial without limitation of time. This construction is emphasized by the fact that in the next section the limitation of time refers only to motions for new trial and has no reference to the power of the court.

The showing on the check incident is not sufficient to justify the court in ordering a new trial. The importance of the check lies in the time of its delivery. The people's case of conspiracy rests upon the claim that, on Saturday, January 28th, the check was given by Hurwich to Furkas for pay roll, in lieu of Hurwich signing individual pay checks prepared by Furkas. Now that the existence of the check is admitted, its date, January 26th, is of consequence only as bearing upon the time of delivery. The testimony is undisputed that Furkas made out the individual pay roll checks on January 27th, and it is not now denied that Furkas cashed Hurwich's check at a store Saturday afternoon, the 28th, after the bank had closed for the day. The inference is that Hurwich gave Furkas the check after Furkas had prepared the pay roll checks and too late on Saturday to enable Furkas to get it cashed at the bank.

The prosecuting officers had the check in their possession only a few minutes, and sent it back to be returned to Hurwich's files. The evidence that the check was destroyed rested upon Furkas's affidavit that Miss Kinnamon told him she had destroyed it, and upon her failure to mention the check in her

affidavit. Hurwich does not depose that it was destroyed or that he does not have it. In any event, the fact that the prosecuting officers had it in their possession a few minutes did not prevent Hurwich from offering it in evidence if he had it or offering to prove it as a destroyed check. Had he shown any indication. at the trial to offer it, either by actual production or claim it was lost, and had the people opposed the offer or quibbled about the existence of the check or its date, the situation would have been very much different.

But the record does not show that the theft of the check and its destruction, if it was destroyed, hindered defendants in their defense. The record demonstrates that defendants knew the value of evidence and were diligent in procuring it. Hurwich produced many letters, books, and checks; ledger sheets of Hurwich Iron Company, showing expenditures for the St. Joseph Board & Paper Company, the corporation owning the buildings burned; his own ledger sheets showing all of his personal contributions to the corporation; many checks of his payments for pay rolls and bills before and after the fire; and check stubs of Hurwich Iron Company to show that no check was drawn to Furkas on January 28th. He did not produce his own personal check book stubs. The stubs of a well-kept check book usually will disclose whether a check has been written out of order as to date. He had the check in his possession for many months, and it was not until the trial was well under way that it was purloined. It is straining credulity too far to assume or imagine that Hurwich did not know the fact and date of the personal check he gave to Furkas for the pay roll and its importance as evidence. At no time during the trial did he offer to introduce it or claim

it was lost or destroyed. His testimony regarding the pay roll, the whole of which follows, can hardly be taken otherwise than as demonstration of his deliberate intention not to produce the check or stubs.

"On January 28, 1928, I think I had a personal bank account in South Bend besides the Hurwich Iron Company account.

"*Q.* And as an actual matter of fact, the check you gave Furkas was on the personal account, was it not?

"*A.* What check?

"*Q.* The check you gave Furkas was on your personal account?

"*A.* I don't know what check you are talking about.

"*Q.* Well, how was the pay roll met for the week that ended January 28th?

"*A.* I don't know.

"*Q.* You don't know?

"*A.* No, sir.

"Mr. Nicely and I were paying the pay roll at that time. I don't remember whether or not I paid it that week. I would say that I did pay it. So far as I know it was paid.

"*Q.* And if it was paid, the money came from you and Mr. Nicely, no question about that?

"*A.* It might have come from the bank. If it came from the bank that would be the money of the St. Joseph Board & Paper Company. It would be the money we put up for the St. Joseph Board & Paper Company.

"*Q.* Have you got all your personal check stubs and personal checks for that week in January, 1928?

"*A.* I have not.

"*Q.* So you don't know whether it is among them or not?

"*A.* No, sir.

"*Q.* But you brought up one here you wrote it wasn't among, namely, the stubs of the Hurwich Iron Company?

"(No answer.)"

The prosecuting attorney, having ordered return of the check to Hurwich, having no reason to believe that it had not been returned, having no intimation that Hurwich desired to introduce it in evidence, and having challenged the attention of the defense to the failure to produce Hurwich's personal check stubs after it had produced the check stubs of Hurwich Iron Company, was justified in assuming that the failure to produce the stubs and check was intentional and to make the argument upon that basis. No objection was made to the argument or request to charge upon it. Therefore, error cannot be assigned upon it, and it is to be considered only as a circumstance in moving the discretion of the court upon motion for new trial.

Passing to the motion for new trial, we fail to find an affidavit from Hurwich that he gave Furkas the check on January 26th, or an offer to show by check stub or otherwise that the check was not misdated or any claim that he cannot now produce the check or stubs. The only evidence defendants now offer to show delivery of the check on January 26th, to overcome the prior testimony and strong circumstances indicating delivery on the 28th, is the affidavit of Furkas.

It would be an abuse of discretion to grant a new trial upon the affidavit of a confessed perjurer, whose retraction of his testimony was "without honest purpose" (*People* v. *Furkas,* 255 Mich. 533, 535), when it seems plain that, at the trial, Hurwich intentionally concealed the facts regarding the check

and now, presumably having in his possession physical evidence of the date of its delivery, fails to present it to the court or offer to do so, or to deny that he is able to present it, and even fails to allege on oath that the check was not delivered on the date claimed by the people.

Judgment is affirmed.

CLARK, C. J., and POTTER, SHARPE, and NORTH, JJ., concurred with FEAD, J.