### SNYDER et al. v. UPPER ELK COAL CO.

(Circuit Court of Appeals, Fourth Circuit. September 14, 1915.)

No. 1359.

1. TAXATION ☞849—TAX TITLES—PRIVITY BETWEEN HOLDER OF TAX TITLE AND FORMER OWNER.

Under the laws of West Virginia, there can be no privity between the former owner of land and one who pays taxes under a tax deed thereto, even though such deed be void.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1665; Dec. Dig. ☞849.]

2. JUDGMENT ☞828—RES JUDICATA—STATE JUDGMENT—CONCLUSIVENESS IN FEDERAL COURT.

Where owners of land who had forfeited it to the state for unpaid taxes exhausted all their remedies to avoid such forfeiture in the state courts, the judgments of the state courts in the former owners' suits were conclusive upon the federal courts, so that the owners could not maintain a bill to remove the cloud from their title in such a court.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1504-1509; Dec. Dig. ☞828.

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468; Converse v. Stewart, 118 C. C. A. 215.]

Appeal from the District Court of the United States for the Northern District of West Virginia, at Philippi; Alston G. Dayton, Judge.

Suit by George W. Snyder and others against the Upper Elk Coal Company. Judgment for defendant, and plaintiffs appeal. Affirmed.

H. G. Kump, of Elkins, W. Va. (C. H. Scott, of Elkins, W. Va., and Byron Clark, of Omaha, Neb., on the brief), for appellants.

E. A. Bowers, of Elkins, W. Va., for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

PRITCHARD, Circuit Judge. The learned judge who heard this case in the court below filed a memorandum at the time of the entry of the decree, and after stating the facts discussed the salient points involved in this controversy sufficiently, we think, to give a fair insight into the real questions involved herein. The statement in question is as follows:

"That they admitted in the suit of George W. Yokum, School Commissioner, v. Wm. Snyder and others, that they had failed to meet the legal obligation upon them to see to it that their land was entered upon the land books of Randolph county, wherein it was situate, and that the taxes were properly assessed agains it and paid by them for a period sufficiently long to operate a forfeiture of all their right and title thereto to the state. This admission was reiterated by them in the subsequent cause instituted by the state of West Virginia against them for the purpose of selling the tract as the state's property at public sale. In both of these proceedings they filed petitions making this admission of forfeiture and prayed that they might be relieved therefrom by being allowed to redeem by payment of all back taxes, damages, and costs. Such relief was actually decreed to them in the first proceedings, but the Supreme Court of Appeals reversed the decree solely because a new statute, passed just prior to the entry of the decree, provided for another and different form of action and procedure for the sale and redemption of forfeited and delinquent lands vested, by reason of forfeiture, in the state. Although made on technical ground, the reversal was complete, and this decree, authorizing the Snyders to redeem, became thereby null and void.

"In the second proceeding, under the new statute, the Snyders again filed their petition admitting forfeiture and again praying the privilege of redemption. Clearly by the final decree entered in this cause on the 9th day of February, 1915, this prayer was refused and redemption by the Snyders denied. The Supreme Court of Appeals, upon appeal by the Snyders, at first reversed this denial, but, upon petition for rehearing, reversed itself, and, finally, on December 22, 1908, affirmed the denial of redemption and the terms of this decree of the court below in toto. This, in my judgment, was the final action of the courts of this state having full jurisdiction in the premises, and whose peculiar province it was by the provisions of the statute of the state in such case made and provided, to determine whether or not the state's bounty in the way of permitting redemption was to be extended to the Snyders or denied. For it is too well settled to be longer questioned that, under article 13, sections 4, 5, and 6, of the Constitution of the state, a failure on the part of an owner of any real estate to 'cause the same to be entered upon the land books of the proper assessor and charged with the state taxes thereon' for five successive years causes such real estate to become absolutely forfeited, and such owner's title to be vested in the state. His interest in such case becomes solely in any surplus arising from a sale, if one be made by the state, over and above all taxes in arrear and unpaid, interest at 12 per centum, and costs of sale proceedings. The Supreme Court of Appeals of this state, in McClure v. Maitland, 24 W. Va. 561, 576, 581, says:

" 'The title to the land and all the right and interest of the former owner having thus, by his default, and the operation of the law, become absolutely vested in the state and become irredeemable, she, having thus acquired a perfect title to, and unqualified dominion over, the land, had the undoubted right to hold or dispose of it for any proper purpose, in any manner and upon any terms and conditions she might in her sovereign capacity deem proper without consulting the former owner or any one else; for after the forfeiture had become complete, as it had in the case before us, the former owner had no more claim to or lien upon the land than one who never had pretended to own it. In the exercise of this perfect dominion over her own property, the state saw proper to transfer and vest her title to so much of said land owned by her, in any person, other than those who occasioned the default, as such person may have been in the actual possession of, or have just title to, claiming the same, and was not in default for the taxes thereon chargeable to him. * * * And all the right, title, and interest of the former owner having

been completely divested, he has not a particle of interest in the land—no more than if he had never owned it. * * *

" The whole history as well as the express language of this constitutional provision proves that it was the intention to bestow upon the former owner whatever part of the proceeds of sale might be actually paid or liable to be paid into the state treasury, after the state had sold the land and paid all the taxes, costs, etc., out of the proceeds of the sale; and that it was clearly not intended to give him any interest in the land or its proceeds until a surplus should be ascertained by the proceedings conducted alone by the state through her officers. "Beggars must not be choosers," is a just maxim, and therefore it is the duty of the courts to see that the bounty of the state is not used to her detriment by giving to this provision of her Constitution a forced construction and one that could never have been intended.

" 'I am therefore of opinion that said fifth section of the Constitution did not confer upon the appellant, Maitland, any claim or interest in the land, or any interest or right to participate in the proceedings for its sale, his right to the surplus proceeds not arising until after the sale.'

"This quotation from McClure v. Maitland was cited approvingly by me in Fay v. Crozer [C. C.] 156 Fed. 486, in which my ruling was subsequently upheld by the Supreme Court of the United States upon appeal taken in the case. 217 U. S. 455 [30 Sup. Ct. 568, 54 L. Ed. 837]. See, also, State v. Jackson, 56 W. Va. 558 [49 S. E. 465], and State v. Garnett, 66 W. Va. 106 [66 S. E. 98].

"It, therefore, so far as this suit and those plaintiffs are concerned, matters not whether the defendant, Upper Elk Coal Company, is now claiming the land, or who may be claiming it; whether the state courts in their final determination decided justly or unjustly, rightly or wrongly, that the title was in Upton or otherwise. For by allowing the land to become forfeited the Snyders became strangers to and no longer interested in it, hence cannot maintain this or any other suit in relation to it. The state by the decree of February 9, 1905, through its court empowered to act for it in the premises, refused to extend the grace of redemption to these plaintiffs on account of their default, and that ended it, and this or any other court cannot now set aside or annul this action."

While we are of opinion that the ruling of the court below was eminently proper, nevertheless it is further insisted by counsel for appellants that the forfeiture to which the court below refers is "only apparent and not real, because defendant below merely holds the legal title to the land, with possession of the land itself, in privity with plaintiff below, and that the payment of taxes by defendant below, and those under whom it claims since 1870, has been for benefit of plaintiffs below and inures to their benefit and has actually prevented forfeiture, and in consequence plaintiffs can, by a decree of a court of equity, compel a transfer to them of defendant's title and possession, thus revesting full title in themselves, and leaving nothing in defendant but a mere right to be reimbursed for its money outlay for taxes and expenses incident thereto."

[1] In other words, it is insisted by counsel for appellants that the Cherry tax deed is void, and the subsequent payment of taxes by those who took under it inures to appellants' benefit, and that therefore appellants' title has not been forfeited, and, further, that the appellee holds this property as trustee for appellants' benefit. The rule invoked by appellants applies only where privity exists between the party who pays the taxes and the one who should have paid them, but, while such is the rule, it is well settled by the courts of West Virginia that there can be no privity between a former owner and one who pays taxes under a tax deed even if such tax deed be void.

In the case of Stockton v. Craig, 56 W. Va. 464, 49 S. E. 386, the Court of Appeals of that state, in the third syllabus, said:

"The payment of taxes by adverse claimants of land under fraudulent and void tax decrees and tax deeds does not inure to the benefit of the delinquent owner so as to prevent the forfeiture of his title, for nonentry on the land books."

Also in the case of Webb v. Ritter, 60 W. Va. 193, 54 S. E. 484, the court, in a syllabus, said:

"An invalid sale of land to the state for nonpayment of taxes does not relieve the owner thereof from the duty of causing the same to be kept on the land books and charged with taxes, in order to prevent forfeiture of the title under section 6 of article 13 of the Constitution."

The Court of Appeals of West Virginia also passed upon the question in the case of, Simpson v. Edmiston, 23 W. Va. 675.

"Privity," in the case of Boughton v. Harder, 46 App. Div. 352, 61 N. Y. Supp. 574, was defined as follows:

"Privity implies succession. He who is in privity stands in the shoes or sits in the seat of the owner from whom he derives his title, and thus take it * * * with the burden attending it."

In view of what we have said, we are at a loss to know upon what ground it can be contended that there was privity between appellee and appellants under the facts of this case.

There being no privity between the parties, it necessarily follows that no payment of taxes under the Cherry tax deed could support appellants' claim that they had not been deprived of their title. There being in this case a complete extinction of the equitable as well as the legal title, the appellants could not maintain a bill to remove the cloud from the title.

The court below in disposing of this case, among other things, said:

"It has always seemed to me, from my first reading of the record some months ago, that from an equitable standpoint of view a very great injustice was done the Snyders in the various judicial proceedings had in reference to their right to redeem this 1,000 acres of land. I think so still. I am nevertheless confronted with these facts."

We do not deem it necessary to express an opinion upon this point, feeling as we do that the questions sought to be raised here have already been determined.

It not infrequently occurs that suits of this character are instituted in both the state and federal courts. One would naturally suppose that, where such a considerable length of time had elapsed since the state in the first instance parted with its title to the land, the question as to the validity of such title would never arise; but such is not the case. While it is highly desirable that titles to real estate should be definitely settled, yet it should be remembered that this was not quite so important in the early stages of our history. Then there were no large investments in mining and other industrial enterprises such as we have to-day. The lands that were then considered practically valueless are to-day worth millions of dollars, and are usually

sold to parties who contemplate making heavy investments in buildings, machinery, etc.

At that time numerous tracts of land which were not considered valuable were purchased from the state. The titles to many of these were afterwards forfeited for nonpayment of taxes, and in some instances suits were begun for the recovery of certain of these tracts which would not have been instituted had it not been for the fact that these lands, at one time considered to be of little value, had, owing to the development of that section, become available for mining and other purposes, and, therefore, very valuable.

However, we do not wish to be understood as saying that such are the facts in this case, and, in so far as we know, these appellants, by bringing this suit, have simply sought to assert what they conceive to be a bona fide right.

[2] It clearly appears that appellants have exhausted all their remedies in the state courts of West Virginia. The questions sought to be litigated here were, or could have been, determined in the courts of that state under the pleadings filed therein. If the appellants were to institute a suit for the recovery of these lands in a court of West Virginia at this time, undoubtedly such court would hold that, the matters in controversy having already been adjudicated, any decree or judgment theretofore entered in such suit would be binding upon the parties, and therefore a bar to further proceedings. That the federal courts are bound by the decisions of the state courts in suits of this character is not, in our opinion, a debatable question. Therefore the appellants are not entitled to maintain this suit for the purpose of having questions determined that have been already adjudicated by the state courts of West Virginia.

We have carefully considered the cases cited by counsel for appellants, but are of opinion that they are not controlling in this case, nor do we deem it necessary to enter into a further discussion of the assignments of error inasmuch as we think they are without merit.

In view of the decisions of the Supreme Court of Appeals of West Virginia in the cases to which we have referred, we are impelled to the conclusion that the appellants' right of action is barred, and that therefore the judgment of the lower court should be affirmed.