Interim Decision #1294

MATTER OF O'SULLIVAN

In DEPORTATION Proceedings

A-6210570

*Decided by Board January 15, 1963*
*Service Motion February 14, 1963*
*Decided by Board August 2, 1963*

Absent an affirmative showing of lack of judicial jurisdiction, the order of the trial judge, Recorders Court, Michigan, entered March 19, 1962, granting respondent's motion for new trial, following conviction and sentence, and dismissing the cause *nolle prosequi*, which for all purposes under Michigan law set aside the conviction, is effective to remove the ground of respondent's deportability under section 241(a)(11), 1952 Act, based on such conviction on October 15, 1959, in the same court, of addiction to unlawful use of narcotic drugs.

CHARGE:

Order: Act of 1952—Section 241(a)(11) [8 U.S.C. 1251(a)(11)]—Convicted of violation of a law relating to the illicit possession of narcotic drugs, to wit: unlawful use and addiction to unlawful use of narcotic drugs.

BEFORE THE BOARD

Respondent, a native and national of Canada, 58 years old and divorced, was convicted on October 15, 1959 in the Recorder's Court, Detroit, Michigan of addiction to unlawful use of narcotic drugs. She was a nurse at Doctors Hospital in Detroit and used her position to convert the drugs to her own use.[1]

Subsequently the Service brought these deportation proceedings, which the special inquiry officer originally terminated, distinguishing between illicit possession of narcotics as specified in the order to show cause and unlawful use of narcotics under the statutory provisions in Michigan. The examining officer appealed, contending that the conviction for unlawful use encompassed unlawful possession. We sustained the position of the examining officer in our order of November

[1] C.L., '48 sec. 335.154, Mich. Stat. Ann. sec. 18.1124.

320

20, 1961, which directed deportation on the charge contained in the order to show cause, citing *Matter of H—U—*.[2]

Respondent then commenced an action in the United States District Court, Eastern District of Michigan against the District Director, which was dismissed on March 21, 1962, on stipulation, because of respondent's motion pending before this Board for reopening of the deportation proceedings. We granted oral argument on that motion on February 28, 1962. Counsel for respondent did not appear for oral argument, but submitted a supplementary petition in support of the petition for rehearing.

The supplementary petition called our attention to an order dated March 19, 1962 of the Recorder's Court which granted respondent's motion for a new trial and dismissed the cause on motion of the Assistant Prosecuting Attorney. Counsel for respondent contended, and continues to contend, that such action in the trial court completely removed the basis of the deportation proceedings.

We granted the motion for reopening and reconsideration. Following the reopened hearing the special inquiry officer again terminated the proceedings and certified the case to us for final decision, pursuant to our order.

We now must determine whether the respondent is still deportable under the provisions of section 241(a)(11) of the Immigration and Nationality Act despite the trial court's removal of the conviction upon which the order to show cause is solely based.

The special inquiry officer contends that there is a marked procedural difference between the manner in which respondent's conviction was set aside and the California procedure which the Attorney General had under consideration in *Matter of A—F—*.[3] He states that the ac-

---

[2] 7 I. & N. Dec. 533.

[3] 8 I. & N. Dec. 429. The Attorney General held that, in view of the clear national policy evidenced by the history of paragraph (11) subsection (a) of section 241 of the Immigration and Nationality Act and subsection (b) of that section, as amended, it is immaterial that pursuant to a state statute such as section 1203.4 of the California Penal Code, as amended, or section 1772 of the Welfare and Institutions Code of that State, the verdict of guilty has been set aside and the criminal charge dismissed.

At the time the Attorney General's opinion, *Arellano-Flores'* conviction had not in fact been expunged. Subsequently his probation was terminated and his conviction expunged. We denied a motion to reopen. A declaratory judgment action to review the deportation proceedings followed. The District Court, Southern District of California affirmed the Attorney General in an unreported decision dated 12/15/60. *Arellano-Flores* did not appeal, but sought to relitigate the same issues on writ of habeas corpus, which was denied by the same District Court. That decision has been affirmed. *Arellano-Flores v. Rosenberg*, 310 F. 2d 118 (C.A. 9, 11/9/62). The Court of Appeals did not reach the merits of the petitioner's contention that the deportation proceedings had been voided by the state proceedings removing his conviction.

321

tion of the trial judge here is a judicial act as opposed to expungement in California, in which the court's action is ministerial, and concludes that the present record of the Recorder's Court must be given full faith and credit.[4]

Respondent filed her motion in the trial court more than two years after conviction, and apparently after satisfactory completion of probation. Except for alleging that respondent would not have pleaded guilty, and the court would not have accepted such plea, if it had been realized that upon conviction she would be liable to deportation, the motion does not in any way challenge the proceedings in the state court. No prejudicial error is alleged; no newly discovered evidence is offered.

Whatever on this record the requirements of full faith and credit may be, it is evident the action of the trial court may be disregarded, as the Service urges, only if the court exceeded it power under state law, or if its action, regardless of whether proper under state law, is ineffective in the federal proceedings, because of a federal standard based upon overriding national interest. It is also evident that if the action of the trial court is given effect the deportation proceedings no longer have any basis.[5]

Michigan statutory law provides that the court in which the trial of any indictment shall be had may grant a new trial to the defendant for any cause for which by law a new trial may be granted or when it shall appear to the court that justice has not been done, and on such terms or conditions as the court shall direct.[6] Another statutory

---

[4] 28 U.S.C. 1738.

[5] Without conceding that judicial rules of evidence are applicable in administrative deportation proceedings we note that the certified copy of the court record and of the moving papers may not comply with rule 44 of the Federal Rules of Civil Procedure. *Chung Young Chew* v. *Boyd,* 309 F. 2d 857 (C.A. 9, 10/30/62). The papers lack a certificate that the attesting officer, the clerk of the court, has legal custody of the original record, unless the Judge's certificate, which identifies the attesting officer as the clerk of the court, the court as a court of record and the seal as the seal of the court, is deemed substantial compliance with the custody provision.

We need not rule on this point, however. The copy of the court record was received without objection by the Service. The Service itself submitted the copy of the moving papers. Counsel for respondent declined to do so and in fact objected to admission of the moving papers but only as irrelevant. Under these circumstances any question of admissibility of the records on grounds of competence has been waived.

Counsel did not renew this objection on appeal. In any event, however, we consider the copy of the motion relevant for whatever light it might throw on the basis for the court's action.

[6] C.L. '48 sec. 770.1, Mich. Stat. Ann. sec. 28.1098. Statutory provisions pertaining to indictments apply equally for informations. C.L. '48 sec. 767.2, Mich. Stat. Ann. sec. 28.942.

provision, moderately limiting this authority forbids the granting of a new trial where there has been only harmless error as to any matter of pleading or procedure.[7] There is no indication that any such factor is involved here.

Respondent's motion for leave to file a delayed motion for a new trial was directed toward the discretion of the trial court, which has been held to be inherent in Michigan.[8] The court record shows only that the motion for new trial was heard and granted and that the cause was dismissed on motion of the Assistant Prosecuting Attorney. The record, does not set forth any basis on which the prosecution entered a *nolle prosequi*.[9]

It might be argued that the action of the trial court here was divisible, granting of the new trial being a judicial act and dismissal of the proceedings on the prosecuting attorney's *nolle prosequi* ministerial. A Michigan statute states, however, that the prosecution must obtain leave of the court of jurisdiction before entering a *nolle prosequi*. Such provision indicates the court had discretion. Thus the dismissal would also be a judicial act. In any event, we are principally concerned with the effect of the granting of the new trial which, if we are to be bound thereby, in itself effectively removed the conviction for the purposes of these proceedings. Proper granting of a new trial gener-

[7] C.L. '48 sec. 769.26, Mich. Stat. Ann. sec. 28.1096.

[8] The time for filing such motion as a matter of right had long expired. C.L. '48, sec. 770.2, Mich. Stat. Ann. sec. 28.1099. *Attorney General v. Recorder's Judge*, 341 Mich. 461, 67 N.W. 2d 708 (1954) ; *People v. Hurwich*, 259 Mich. 361, 243 N.W. 230 (1932) ; *People v. Nick*, 360 Mich. 219, 103 N.W.2d 435 (1960) ; *People v. Andrews*, 360 Mich. 572, 104 N.W. 2d 199 (1960).

[9] A Michigan statute provides that the prosecution shall set forth the basis for entering a *nolle prosequi*. C.L. '48, sec. 767.29, Mich. Stat. Ann. sec. 28.969. Statutes to the same effect have been interpreted in Colorado as mandatory and in Texas as directory. *Van Gundy v. O'Kane*, 142 Colo. 114, 351 P. 2d 282 (1960) ; *Ex parte Rusk*, 128 Tex. Crim. 135, 79 S.W. 2d 865 (1935) ; *Ex parte Kinsey*, 152 Tex. Crim. 425, 214 S.W.2d 628 (reh. den. 1948). No interpretation of this provision by the Michigan courts has been found.

Counsel for respondent said at oral argument that the Michigan prosecutor can make a motion to dismiss any proceedings pending before a court and upon that motion in the proceedings are dismissed. He cited no authority however.

In passing we might mention that there is some evidence that the prosecution in Michigan has broad power to *nol. pros.* In an early case the Michigan Supreme Court adopted the procedure, highly unusual at the time, of remanding the case to a circuit court with direction that a *nolle prosequi* be entered. Such judicial assumption of the prosecution's power indicates that Michigan courts would be likely to take a liberal view of the exercise of that power by the prosecution. *People v. Gulye*, 23 Mich. 93 (1871).

ally vacates the judgment and places the defendant back in the position occupied prior to trial.[10] This is the rule in Michigan.[11]

Respondent moved for a new trial partially to obtain an opportunity to change her plea of guilty.[12] The privilege of withdrawing a plea of guilty after sentencing involves setting aside the judgment of the court and is not favored. The Supreme Court of Michigan so ruled in affirming a denial of a motion for leave to withdraw a plea of guilty and for a new trial. The defendant had expected a lighter sentence than the trial court imposed. The court endorsed the view of a California court that, where the defendant knows his rights and the consequences of his act of pleading guilty, the mere fact that he hoped, or believed, or was led by counsel to believe that he would receive a shorter sentence or milder punishment by pleading guilty than after trial and conviction, does not warrant the trial judge's exercise of discretion in favor of permitting the change of plea.[13]

The same court also affirmed denial of a motion for a new trial based upon refusal of the trial court to allow withdrawal of a plea of guilty before sentencing when, through the sentencing of a codefendant, the defendant has reason to expect a heavier sentence than previously anticipated.[14] Michigan law, therefore, indicates that a new trial will not ordinarily be granted when its purpose is to afford an opportunity to change a plea of guilty because the resulting punishment is greater than anticipated. If, therefore the trial judge granted a new trial to respondent merely to enable her to avoid deportation, he would apparently have acted contrary to the way in which he could properly act under the law of his state in an issue confined to punishment lawfully imposed by the court but substantially beyond the defendant's expectation.[15]

Counsel for respondent relies mainly upon the power of a Michigan trial court judge to act as the judge did here. As authority he cites

[10] *Matter of G–*, 1 I. & N. Dec. 96; *Matter of H–*, Int. Dec. No. 1159 (7/26/61); 24 C.J.S. Crim. Law sec. 1426.

Counsel for the Service points out that here there was in fact no new trial and no new plea. These of course were obviated by the dismissal of the proceedings. If the prosecution or the court had acted beyond its powers in dismissing the action we would be faced with the question whether the granting of the new trial and the dismissal were divisible or interdependent. We have not found that either exceeded its authority in this respect, however.

[11] *People* v. *Huffman*, 315 Mich. 134, 23 N.W. 2d 236 (1946).

[12] Respondent's allegations in support of withdrawal of her plea of guilty are the only ones in her motion upon which the court could have effectively acted.

[13] *People* v. *Goldman*, 245 Mich. 578, 223 N.W. 124 (1929).

[14] *People* v. *Case*, 340 Mich. 526, 65 N.W. 2d 803 (1954).

[15] A trial court has no obligation, moreover, in accepting a plea of guilty to warn a defendant about possible deportation. *U.S. ex rel. Durante* v. *Holton*, 228 F. 2d 827 (C.A. 7), reh. den., cert. den. 351 U.S. 763 (1956).

only *Attorney General* v. *Recorder's Judge*, also cited by the special inquiry officer.[16]

The Service Representative questions the authority of the trial judge under state law to remove the conviction, likening such action to an expungement or pardon. He refers to *People* v. *Fox*.[17] In *Fox* the Michigan Supreme Court overruled the particular trial judge who tried respondent. A sentence of life imprisonment for robbery had been partly served when the trial court reduced the sentence. The Supreme Court held that the trial court's jurisdiction had ended with pronouncement of the sentence, and that to permit the power to reduce the sentence under the circumstances would infringe on the pardoning power of the governor and violate the jurisdiction of the parole board. That case did not involve a new trial, however, and is not authority for any such restriction on the power of the trial court when, as here, a new trial has been granted.

The Service Representative also contends that deportation of narcotics offenders is an area in which the Federal Government has the predominant interest, that the trial court acted solely to circumvent the federal statute, and that the court had no jurisdiction over the matter for this purpose.

It is clear that Congress has attempted to circumscribe the power of trial judges to affect deportation proceedings involving narcotic violations.[18] Counsel for respondent asserts that Michigan judges would act properly and with restraint where a conflict with federal law is indicated. Congress, however, has indicated unwillingness to accept any judicial recommendations with respect to deportation of narcotic offenders.[19]

Respondent's motion in the trial court, in addition to contending that in view of the deportation proceedings the consequences of her plea of guilty were more severe and far reaching than she or the court realized, asserted that the court never had notice of the deportation proceedings and had no opportunity to place in its files and record within the 30-day statutory period following the court's sentence a recommendation for or against her deportation. Due to the statutory proscription such references in her motion for a new trial could not have been given effect by the court.[20]

Moreover, for the same reason, a pardon would be ineffective against respondent's deportation. The granting of a *nolle prosequi* after ver-

---

[16] *Supra* [6].

[17] 312 Mich. 577, 20 N.W.2d 732 (1945).

[18] *Matter of A—F—, supra* [3].

[19] Sec. 301(c) Act of 7/18/56 amending sec. 241(b) of the Immigration and Nationality Act, 70 Stat. 575.

[20] Sec. 241(b) of the Immigration and Nationality Act, as amended.

dict has been likened to a pardon.[21]   The prosecution's act of granting a *nolle prosequi* in respondent's case, if granted only to defeat her deportation would have something of the effect of a pardon, although technically because of the intervening grant of a new trial the *nolle prosequi* was not entered after judgment.

Congress in setting up the statutory rules covering deportation has not specifically dealt with new trials, or other proceedings to reopen or otherwise affect final judgments, the results of which could affect deportability.   Elsewhere in the statute Congress considered the effect of the power of a court to correct, reopen, alter, modify or vacate its judgments or decrees and did not infringe upon that power.[22]   That provision, however, which relates to revocation of naturalization, arose to overcome the effect of *Bindczyck* v. *Finucane*.[23]

The Supreme Court held in *Bindczyck* that section 338 of the Nationality Act of 1940, the predecessor to section 340 of the Immigration and Nationality Act, was the exclusive procedure to cancel citizenship based upon evidence outside the record revealing fraudulent or illegal procurement.   The Court upheld a United States district court's judgment declaring plaintiff to be a citizen of the United States, thus overruling a Maryland court which had on motion of the Government set aside its own order of naturalization on the ground it was obtained by fraud.

Because of the special history of section 340(j) of the Immigration and Nationality Act and the different situations encompassed by that section and section 241(b) of the Act, Congress' silence on new trials and similar proceedings in the latter provision permits no inference that Congress did or did not intend to make such procedures ineffective in proceedings under section 241(a)(11), along with pardons and judicial recommendations against deportation.   Congress, even when legislating upon matters in which the federal interest is very high, rarely occupies a field completely.

Although several cases have been decided both administratively and judicially on the general proposition of the effect of further criminal proceedings, other than strictly review proceedings, upon orders of deportation which have been based upon the results of the prior proceedings, all may be distinguished from the instant case on substantial grounds.

In our order of May 3, 1962 reopening these proceedings we stated that the procedure setting aside the conviction here might be distin-

[21] *State of Louisiana ex rel. Butler* v. *Moise*, 48 La. Ann. 109 (1895).
[22] Section 340(j) of the Immigration and Nationality Act, 8 U.S.C. 1451(j).
[23] 342 U.S. 76 (1951).

guishable from the procedure which the Attorney General had under consideration in *Matter of A—F—*.[24]

The Attorney General specifically limited that holding to the effect of state laws of the nature of the California statutes considered in his opinion upon deportation proceedings brought under section 241 (a)(11). He disapproved *Matter of D—*, which also involved a narcotic conviction.[25] Later, however, he upheld a decision of this Board terminating deportation proceedings in which a California conviction for a nonnarcotic offense was expunged under the procedure authorized by section 1203.4 of the State's Penal Code.[26] It is clear therefore that the rule in *Matter of A—F—* is to be narrowly applied.

We agree with the special inquiry officer and respondent's counsel that there are substantial differences between expungement of a conviction under statutory provisions like those in California and the procedures followed in respondent's case. The latter were not based upon special, defined statutory authority, peculiar to a small number of jurisdictions. The trial judge and the prosecuting attorney exercised powers which are recognized in Michigan as inherent in their positions, and which have been so recognized in a number of jurisdictions. Michigan statutes do not place much restriction on these powers.

The trial judge's granting of a new trial was clearly a judicial act, performed in the exercise of his discretion. His dismissal of the cause on the prosecuting attorney's *nolle prosequi* was probably a judicial act under Michigan law. Even if ministerial, however, it would not appear to impair the effect on the deportation proceedings of the granting of a new trial.

Respondent's completion of her period of probation before the grant of a new trial may have been a factor influencing the judge and prosecuting attorney, but the action which they took could have been taken at any time. Unlike the California procedure, absence of any pending probationary period was not a necessary condition for the action taken. Apparently respondent's conviction could not now be used for any purpose in Michigan, whereas in California the conviction remains available for certain purposes. Thus even though both expungement in California and granting of a new trial coupled with dismissal of the action remove the record of conviction, cases involving the California procedure are not necessarily controlling here. We do not appear to have in respondent's case a technical expungement which the Attorney General found ineffective for deportation purposes in *Matter of A—F—*.

---

[24] *Supra*.

[25] 7 I. & N. Dec. 670.

[26] *Matter of G—*, Int. Dec. No. 1119 (1/17/61).

The special inquiry officer refers to two decisions of this Board which have considered the Michigan procedure, both involving non-narcotic convictions, *Matter of P—* and *Matter of H—*.[27] In *Matter of H—* we distinguished *Matter of A—F—* on the basis that the latter is confined to narcotic cases.[28] *Matter of H—* thus has limited precedent value for respondent's case, but does indicate the procedure of granting a new trial may be effective in defeating deportation proceedings, where Congress has not imposed, directly or indirectly, an overriding federal standard.

The special inquiry officer believes that it is immaterial whether the court acted solely to enable respondent to avoid deportation, citing *Matter of P—* and *Matter of H—*.[29] He notes, however, the somewhat contrary effect of a later decision in which the Attorney General pointed out, in a nonnarcotic case, that the court granted *coram nobis* to correct a constitutional defect in the prior decision and not solely to obtain an opportunity to recommend against deportation.[30] The Attorney General upheld the validity of such recommendation at the retrial as made at "the time of first imposing judgment or passing sentence."[31]

The Attorney General was not squarely confronted with the question whether a court's action taken solely to enable a delayed recommendation against deportation is effective. In *Matter of S—*, also a nonnarcotic case, we specifically answered that question.[32] The court vacated a conviction, accepted a new plea and resentenced the defendant, recommending for the first time against deportation. The court based its action solely on its previous unawareness that the defendant was subject to deportation, and its belief that this added penalty would constitute "manifest injustice" under the New Jersey statute authorizing its procedure. We held that under these circumstances the court's recommendation was ineffective and the second conviction still supported deportation.

Both of these decisions referred to *U.S. ex rel. Piperkoff* v. *Esperdy*.[33] The Court of Appeals for the Second Circuit there found that the New York court granted *coram nobis* solely to repair an earlier omission to recommend against deportation. The court concluded that section 241(b) of the Immigration and Nationality Act establishes a federal standard for determining what constitutes the first entry of judgment

[27] 3 I. & N. Dec. 187 and *supra* [20].

[28] *Matter of G—, supra* [20].

[29] *Supra* [27] and [20].

[30] *Matter of P—*, Int. Dec. No. 1142 (5/24/61).

[31] Section 241(b) of the Immigration and Nationality Act.

[32] Int. Dec. No. 1206 (4/19/62).

[33] 267 F.2d 72 (C.A. 2, 1959).

or passing of sentence, which the trial court's action did not meet.

Reading *Matter of A—F—* in the light of these three recent cases under section 241(b) of the Immigration and Nationality Act presents a strong argument that any judicial action to set aside a narcotic conviction solely for the purpose of enabling avoidance of deportation would be ineffective. To hold otherwise might permit a court to do by indirection what it could not do directly. The law is far from clear here on the federal question, however. Cases which concern the specific statutory provisions for judicial recommendations against deportation obviously differ from those, like respondent's, which can be brought within the statute only by implication. We have pointed out some of the more important distinguishing factors in respondent's case. A careful reading of the cases reveals additional ones.

The Supreme Court in *Pino* v. *Landon* rejected the view of the Court of Appeals that a federal standard attaches to the term "convicted" for the purposes of section 241(a)(4) of the Immigration and Nationality Act.[34]

The Attorney General pointed out in *Matter of G—* that the Massachusetts procedure considered in *Pino* v. *Landon* revoked the sentence but did not disturb the finding of guilt, while the California procedure which he considered in *Matter of A—F—*, and again in *Matter of G—*, went further by setting aside the plea or finding of guilt. The Michigan procedure goes still further since the conviction is set aside for all purposes so far as the State is concerned, whereas in California the record of the prior conviction may be used for limited purposes.

In *Giova* v. *Rosenberg* the Court of Appeals for the 9th Circuit ruled that it had no jurisdiction to review an order of this Board denying a motion to reopen deportation proceedings.[35] The court stated that it was tempted to discuss the merits of the case, but could not reach the rationale behind *Pino* v. *Nichols*, page 243, or the effect of the Attorney General's holding in *Matter of A—F—*, or this Board's decisions in *Matter of B—* and *Matter of G—*, because the Court could not give an advisory opinion.[36] Such statement, however, indicates the

[34] 349 U.S. 901 (1955). The case involved the finality of a conviction under unique procedure. Cf. *Hernandez-Valensuela* v. *Rosenberg*, 304 F. 2d 639 (C.A. 9, 1962).

[35] 308 F. 2d 347 (C.A. 9, 1962).

[36] *Matter of B—*, 7 I. & N. Dec. 166 and *Matter of G—*, 5 I. & N. Dec. 129 concerned respectively an amnesty and extinction of a record of conviction under Italian law. *Pino* v. *Nichols*, 215 F. 2d 237 (1954), reversed per curiam sub nom. *Pino* v. *Landon*, supra[34], states at page 243 that the meaning of the word "convicted" with respect to the deportability of aliens is a federal question to be determined in the light of the policy behind section 241(a)(4) of the Immigration and Nationality Act.

court's probable nonconcurrence with at least some of the reasoning behind these holdings.

We are not at all sure that the Attorney General would extend his ruling in *Matter of A—F—* to cover a situation like respondent's even though her case also involves a narcotics violation. Thus it is questionable whether respondent's case falls within the ambit of *Matter of A—F—* and *Piperkoff*, as the Service Representative urges, even if, as he assumes, the Recorder's Court acted solely to defeat respondent's deportation.[37]

Moreover, we are unable to follow the Service Representative in this assumption. Respondent's counsel has pointed out that considerations other than respondent's liability to deportation may have moved the court and the prosecution. No reason is given for the portion of the order either granting a new trial or dismissing the case. There is no indication that the trial court based its action even in part upon respondent's motion. However desirable we might consider a detailed record setting forth the reasons for the court's action, a judge in Michigan does not appear to be under any compulsion to provide one.[38]

With due regard for the fact that there is a strong federal interest here, and that the only evidence of the reasons for the court's action points to the impact of the federal statute, we are unable to rule that the Michigan court acted without sufficient authority. There is nothing to indicate that the court exceeded its authority under state law, which bestows broad discretionary powers. It is not clear that there is a federal standard applicable here which requires that conflicting state action be disregarded. Insofar as these matters are in doubt the doubts should be resolved in favor of the respondent.[39]

We consider that there should be a clear indication that a particular application of a trial court's authority is ineffective before we disregard it. Our reasoning on this point is similar to that which we applied in *Matter of H—* in disposing of the Service's contention that no effect should be given to the second sentence of the court and consistent with the position we have generally taken in this type of case.[40] We shall approve the decision of the special inquiry officer.

---

[37] In *Matter of H—, supra*[20], we distinguish *Piperkoff* from a situation involving a new trial. As we have noted, however, *Matter of H—* was not concerned with a narcotics violation.

[38] Rule 47 of the Michigan Court rules calls for the filing of a concise statement of the judge's reasons for denying a motion for a new trial, but makes no such provision if the motion is granted. 24 Mich. S. B. J. 47.

[39] *Fong Haw Tan* v. *Phelan*, 333 U.S. 6 (1948).

[40] Cf. *Matter of G—, supra*.[20]

**ORDER:** It is ordered that the decision of the special inquiry officer terminating the deportation proceedings be and hereby is approved.

## BEFORE THE CENTRAL OFFICE

THE IMMIGRATION AND NATURALIZATION SERVICE MOVES THE BOARD OF IMMIGRATION APPEALS FOR RECONSIDERATION of its order of January 15, 1963, approving the decision of the Special Inquiry Officer.

## FACTS

Respondent is a native and national of Canada, a divorced female, age 58. On October 15, 1959, in the Recorder's Court of the City of Detroit, Michigan, she plead guilty to unlawful use of narcotic drugs. She was sentenced to two years imprisonment and placed on probation. On November 20, 1961, the Board found her deportable under section 241(a)(11) by reason of this conviction, and ordered deportation.

On February 16, 1962, counsel for the respondent filed in the Recorder's Court for the City of Detroit, Michigan, a "Motion for a New Trial, Notice of Motion and Affidavit in Support of Motion." The motion recited as the reasons for requesting a new trial that the conviction was more far-reaching in its consequence than realized at the time, inasmuch as it was not known that deportation proceedings would be instigated based upon the conviction; that the court was not informed of the deportation proceedings; that the court had never had an opportunity to make a recommendation either for or against the deportation of the defendant from the United States within the thirty-day period following the sentence; and, that the defendant and the court did not anticipate that the plea and conviction would be as severe in effect in causing the defendant to be separated from and deprived of her family and home in this country.

The affidavit in support of the motion also cited as the sole reason for the motion, that the deponent was being penalized in excess of the original sentence contemplated by the court, in that a warrant for deportation had issued requiring her deportation, and that if she had known of the contemplated action by the Immigration Service she would not have pleaded guilty and the court would have stated that the sentence was not to be the basis of a deportation proceeding. A certified copy of the order of the Recorder's Court states, "On the 19th day of March 1962. Motion for new trial heard and granted on motion of Assistant Prosecuting Attorney William Flanigan, the court orders said cause be and the same hereby dismissed." Insofar as shown by the record, this reflects the entire proceeding in the Recorder's Court.

331

Following rehearing and introduction of the above evidence in the instant deportation case, the proceedings were terminated by the Special Inquiry Officer on the ground that the action of the Recorder's Court must be given full faith and credit, and the criminal conviction no longer exists as a basis for deportation. The Board has sustained this ruling.

## DISCUSSION

It should be pointed out initially that the motion for new trial erroneouly asserted a capability in the court to make a recommendation against deportation. Section 241(b) expressly is inapplicable in the case of any alien charged with being deportable under subsection 241 (a)(11). This provision was added by section 301(c) of the Act of July 18, 1956. It reflects the concern of the Congress over court decisions[1] holding that a pardon or judicial recommendation against deportation relieved a narcotic offender of deportability. Since July 18, 1956, this is not the case.

In this connection also, as noted by the Attorney General in *Matter of A—F—*, 8 I. & N. 429, 445, the history of section 241(a)(11) is convincing that Congress did not intend that aliens convicted of narcotic violations should escape deportation.

Traffic in narcotics has been a continuing and serious federal concern. Congress has progressively strengthened the deportation laws dealing with aliens involved in such traffic. Thus, . . . in 1940 the deportation statute was amended to eliminate the requirement that in addition to a conviction there must be a sentence. At the same time the statute was extended to convictions for violation of State as well as Federal statutes. And, since the 1956 amendment an alien may no longer escape deportability by proffering a pardon.

Significantly, the Act of July 18, 1956, increased the severity of the statute as to narcotic offenders by making the deportation provisions applicable to those convicted for possessing narcotics as well as conspiracy to violate the narcotic laws.

There exists no provision for expungement under Michigan law, and even if such provision did exist, under the rule in *Matter of Arellano-Flores*, 8 I. & N. 429 (262 F. 2d 667) such expungement would not relieve of deportability. In this connection the Attorney General has said:

In the face of this clear national policy, I do not believe that the term 'convicted' may be regarded as flexible enough to permit an alien to take advantage of a technical 'expungement' which is the product of a state procedure wherein the merits of the conviction and its validity have no place. I believe that Congress intended the inquiry to stop at the point at which it is ascertained that there has been a conviction in the normal sense in which the term is used in

---

[1] *De Luca* v. *O'Rourke*, 213 F. 2d 759, C.A. 8, 1954; *Ex parte Robles-Rubio*, 119 F. Supp. 610 (N.D. Calif., 1954).

332

Federal law. . . . Of course, if the conviction is still subject to reversal by the usual processes of appellate scrutiny, the statute is not satisfied. But beyond this I do not think the inquiry can extend, consonant with the congressional purpose and policy. . . . Moreover, to follow the Board's view would make the deportability of the alien depend upon the vagaries of state law. . . ." (Id. at 446)

As noted in the oral argument before the Board, and commented on in the decision of January 15, 1963, no Michigan authority has been specified as authorizing the procedure in this case, after a conviction and after the sentence had been served. While the moving papers are designated "Motion for a New Trial" the record of the proceedings in the Recorder's Court do not establish that there was in fact a new plea or trial. The order reflects only that the *motion* for new trial was heard and granted, and that on motion of the prosecuting attorney the cause was dismissed. On the present record there was no rehearing on the merits nor does it appear that the alien was even present.

However, assuming arguendo that the procedure before the Recorder's Court was in the nature of a *coram nobis* proceeding, and that there was in effect something in the nature of a new trial or proceeding, nevertheless it would be without force and effect as to this proceeding if the sole basis for vacating the judgment was to defeat a Federal mandate as to deportability. *Piperkoff* v. *Esperdy*, C.A. 2, 267 F. 2d 72.[2] Here, the moving papers in the Recorder's Court recited one cause, and one cause only, for the action, namely, to relieve of deportability. Despite the fact that this was specifically made an issue in the course of oral argument before the Board, counsel alleged no other or different ground for the action taken, nor does the record leave any serious room for speculation.[3]

The decision has chosen to treat the Recorder's Court proceeding as the granting of a new trial and the entry of a *nolle prosequi* by the prosecutor. As noted above, there is a serious question as to the validity or propriety of this action under the Michigan law, or of the jurisdiction of the court to take the action, particularly in connection with the issue of a punishment lawfully imposed by the court but substantially beyond the defendant's expectation (dec. p. 8, and cases cited). If the court acted beyond its jurisdiction, then clearly its

---

[2] Cf. *Matter of Plaut*, Int. Dec. No. 1142. where in addition to seeking the writ because the conviction could result in deportation, the respondent also indicated an abuse of due process in that he had not been represented by counsel and did not understand the charges against him at the time of first conviction—and where the Attorney General ruled the action of the court in setting aside the conviction must be recognized since it might have rested on some basis other than relieving deportability.

[3] The Board so found on almost identical facts in *Matter of S—*, Int. Dec. No. 1206 and *Matter of H—*, Int. Dec. No. 1170.

action need not be given full faith and credit. (*Matter of H—*, Int. Dec. No. 1170.)

However; again assuming the action valid in the State of Michigan as a *nolle prosequi*, and completely effective within that state as wiping out the conviction, nevertheless it cannot wipe out the conviction for immigration purposes if a state judicial process was resorted to solely to relieve of deportability under the Federal statute. It is to be noted that in *Piperkoff, supra*, the court assumed for purposes of the case that under the law of New York it was proper for the court to vacate the earlier judgment as it did. That did not affect the outcome of the deportation proceedings.

A similar question was presented in *Matter of S—*, Int. Dec. No. 1206. There a county court acted under a New Jersey statute reading, "... to correct manifest injustice, the court, after sentence, may set aside the judgment of conviction and prevent the defendant to withdraw his plea." The court permitted the vacating and setting aside of the plea of guilty and sentence, for a conviction forming the basis of the deportation proceeding.

The Board pointed out:

The difficulty arises not with the jurisdiction of the state court to grant the motion to vacate but the attempt of the state court to invade an area to which Congress has seen fit to erect or impose a federal standard. ... The "manifest injustice" referred to ... was ... the specifically stated reason that the court was not aware (at the time of first sentencing) that the defendant was subject to deportation as an alien, did not consider that the defendant was faced with additional penalty of deportation and that it would be manifestly unjust to subject the defendant to the additional penalty. ...

Pointing to *Matter of Plaut*, Int. Dec. No. 1142, *supra*, the Board then held that the recommendation against deportation made at the time of re-sentencing, was not effective to relieve of deportability within the federal mandate set forth in section 241(b) of the Immigration and Nationality Act, since the vacating of the first judgment was solely to defeat the congressional mandate.

The analogy is obvious. No basis exists for applying a more ameliorative rule to a narcotics conviction than to the ordinary criminal conviction. On the contrary, no deportation provision in the Act evidences a clearer restrictive congressional intent than section 241(a)(11).[4] The successive amendments of the narcotics provisions of the statute to make them more stringent, reflect the constant and increasing concern of the Congress in this area. In barring narcotic offenders from section 241(b) relief the Congress has said firmly and unequivocally that an alien in the category of this alien, shall be deported. The purpose and intent of the statute, and the desire of the Congress,

---

[4] H. Rep. 2546, 84th Congress, 2nd Session.

cannot be frustrated by an action of a state court aimed purely and solely at defeating federal mandate.

It is no solution to say that the Congress in the statute barred pardons or judicial recommendations, but did not deal with the area of new trials or a possible *nolle prosequi*. The Congress obviously could not foresee every device to which resort might be had, to avoid the effect of the statute. By the same token a state court proceeding attacking the prior conviction on valid grounds having nothing to do with immigration, or only incidental thereto, obviously must be given full faith and credit. But this is not the situation where the overriding national interest has been expressed in a federal statute and the action of the state court is for the sole purpose of defeating that federal statute.

In summary, by express language of the statute, a pardon would not be effective to defeat deportation. Similarly, a recommendation against deportation by the sentencing court would have no effect. Under *Arellano-Flores*, *supra*, expungement under lawful state process would be without effect. Under *Piperkoff*, a new trial granted solely for the purpose of relieving of deportability under section 241(a)(4) by vacating judgment and imposing a new sentence would be without effect. No logical basis for distinction as to a narcotic conviction presents itself. Under *Matter of S—*, Int. Dec. No. 1206, a setting aside of conviction under lawful state process, if done for the sole purpose of defeating deportation, even as to a nonnarcotic offender, would be without effect. Again, no basis for distinction as to the narcotic offender exists in view of the firmly expressed intent of the Congress that the narcotic offender be treated even more stringently than the ordinary criminal. In the light of these rulings and even assuming the state court to have jurisdiction to take the action it did, the one additional step required here occasions no difficulty. It is submitted that where motion for new trial is granted after conviction and sentence, and the case then *nolle prossed*, that action also would have no effect on the deportation proceedings *if done solely to defeat these deportation proceedings*.

*Motion is made* that the Board reconsider and withdraw its order of January 15, 1963, approving the decision of the Special Inquiry Officer, and that the alien be found deportable as charged.

### BEFORE THE BOARD

The Service moves for reconsideration of our order of January 15, 1963, which affirmed the special inquiry officer's order that the deportation proceedings be terminated. We adhere to our previous decision.

The Service motion, as well as our decision of January 15, 1963, sets forth the facts. We shall not restate them.

### I. Did the trial judge act solely to remove deportability?

The Service continues to assume that the trial judge in granting respondent's motion for a new trial (and probably also in granting the prosecuting attorney's motion for dismissal) acted solely to defeat respondent's deportation. Since the Service has submitted no evidence which shows clearly the basis for the judge's action, this assumption is essential to its argument.

As we pointed out in our prior decision, even though respondent's motion for a new trial appears to be directed only against the deportation proceedings, we cannot assume, with the Service, that the court acted solely to enable respondent to avoid deportation. There is no inescapable inference that the court considered only what appears in respondent's motion. Thus the Service has failed to meet its burden of proof at the initial point in its contentions. The motion, as well as the case against respondent, really fails here. Moreover, the Service motion, in essence, merely reasserts the argument which the Service has previously made in the case.[1] On either basis we might summarily deny the motion. We go on to answer the Service's objections, however, because of the importance of the issues here.

### II. If the trial judge so acted, does a federal standard control?

We acknowledged in our prior decision that, assuming the trial judge acted solely to defeat deportation, the Service's argument that a federal standard prevails here has a certain force. We still found that argument insufficient as a basis for respondent's deportation. The argument has gained no additional force in its restatement. In fact it has suffered. Subsequent to its formulation, the Court of Appeals for the Third Circuit overruled one of our decisions on which the Service relies.

The law does not establish that an overall federal standard would nullify the trial court's action here if that action were taken solely to defeat deportation. Of course there is a limited "federal standard" in deportation cases which rest upon convictions in state courts. The Court of Appeals for the Second Circuit has so recognized for an application of section 241(b) of the Immigration and Nationality Act in *U.S. ex. rel. Piperkoff v. Esperdy.*[2] The Attorney General so

---

[1] The Service cites only two judicial decisions which we did not consider in our prior decision. Those decisions form part of the background for the amendment to section 241(b), Immigration and Nationality Act. Respondent's case does not specifically concern section 241(b), however. That section is useful here only for discussion purposes—to point out limitations and distinctions—especially in considering whether the amendment thereto aids in creating a controlling federal standard here.

[2] 267 F.2d 72 (C.A. 2, 1959). cited by the Service.

recognized for certain narcotic cases in *Matter of Arellano-Flores*.[3] We see no grounds for extending the standard found by the Attorney General to the situation presented by respondent's case.

We have at least twice rejected quite similar arguments, vigorously advanced by the Service, advocating holding ineffective a state court's action which otherwise would relieve of deportability.[4]

The concluding reasoning urged by the Service motion suggests that under *Arellano-Flores* expungement under lawful state process would be without effect, that under *Piperkoff* a new trial granted solely for the purpose of relieving of deportability under section 241(a)(4) by vacating judgment and imposing a new sentence would be without effect, and that under *Matter of S—* a setting aside of the conviction under lawful state process, if done for the sole purpose of defeating deportation, would be without effect.[5] The Service then suggests that the one additional step required here occasions no difficulty—granting of a motion for new trial after conviction and sentence, with the case then *nolle prossed*, also should have no effect on deportation proceedings if done solely to defeat those proceedings.

Unfortunately for the foregoing reasoning, the grounds set forth in our decision in *Matter of S—* have been judicially overruled.[6] Thus the Service's argument breaks down at a crucial point. Even before

---

[3] 8 I. & N. Dec. 429.

[4] *Matter of G—*, Int. Dec. No. 1119, approved by the Attorney General; *Matter of H—*, Int. Dec. No. 1159.

[5] *Matter of Arellano-Flores, supra*[3]; *U.S. ex. rel. Piperkoff v. Esperdy, supra*[2]; *Matter of S—*, Int. Dec. No. 1206.

The Service notes *Arellano-Flores v. Hoy*, 262 F. 2d 667 (C.A. 9, 1958) cert. den. 362 U.S. 921, as a parallel citation for *Matter of Arellano-Flores*. That case, however, occurred prior to the expungement of conviction which led to the Attorney General's decision in *Arellano-Flores*. The Attorney General's opinion in *Matter of G—, supra*[4] demonstrated the inapplicability of *Arellano-Flores v. Hoy* to his decision in *Matter of Arellano-Flores*. Our order of January 15, 1963 gives the subsequent judicial history of the *Arellano-Flores* case. We noted also in our prior decision that in *Giova v. Rosenberg*, 308 F. 2d 347 (C.A. 9, 1962) the court indicates that it questions the soundness of *Matter of Arellano-Flores*.

The Service refers to *Matter of H—*, Int. Dec. No. 1170, along with *Matter of S—*, as an instance in which we have found that the court acted to defeat deportation. In *Matter of H—*, we did mention that it was difficult to conclude from the record that the conviction was not vacated because it made the respondent liable to deportation. Our decision, however, turned upon our conclusion that the justice court did not have authority under its own state law to vacate the judgment of conviction. Moreover, although we reversed the special inquiry officer, we approved his opinion that there was no controlling federal standard and that *Piperkoff* was inapplicable.

[6] *Sawkow v. Immigration and Naturalization Service*, 314 F. 2d 34 (C.A. 3, 1963). This case is a further indication that the principle in *Piperkoff* has restricted application.

768–456—65——23

the Court of Appeals reversed *Matter of S*—, however, we were unwilling to take the step from our reasoning in that case to a similar action in respondent's case. Our order of January 15, 1963 distinguished *Piperkoff* and *Matter of S*—, as well as *Matter of Arellano-Flores*.

The Service says *Piperkoff* and *Matter of S*— should not be distinguished on the grounds that they concerned nonnarcotic offenses. In those cases, however, the claims of nondeportability were based upon judicial recommendations against deportation. In view of the amendment of section 241(b) that issue cannot be present in a narcotics case.[7] The Service thus tries to reason analogously from situations which could not themselves be reproduced in a case like that of respondent. We think the gap between the cases is too great to be bridged by analogy, although the Service, in its preoccupation with Congress' restrictive measures against alien narcotics offenders, bridges it easily.

The Service in effect says judicial and administrative decisions have disregarded certain procedures of the courts whose sole purpose was to enable a recommendation against deportation. Congress has made the deportation provisions for narcotics violators more stringent than for other criminal aliens. Therefore in amending section 241(b) of the Act to make it inapplicable to persons deportable under section 241 (a)(11), Congress intended any judicial process, even though otherwise a valid exercise of the court's authority, to be without effect, if designed solely to prevent deportation of an alien convicted of a narcotics violation.

This conclusion does not necessarily follow, however. It overlooks the effect of any judicial authority in areas which Congress has not specifically restricted. It also fails to appreciate that a federal standard for the term "conviction" in deportation cases has been found only to a very limited extent.[8]

Our prior decision pointed out that Congress has limited to pardons and judicial recommendations against deportation its prohibition against measures preventing deportation of alien narcotics violators.

---

[7] The motion notes in its opening discussion that section 241(b) is inapplicable here.

[8] Discussing the Government's contention that, if a judgment of conviction is vacated for the purpose of avoiding deportation, a subsequent recommendation against deportation is ineffective, the court in *Sawkow* says, "This argument misses the mark, for no contention is made that the state court either exceeded its jurisdiction or abused its discretion in vacating the plea of *non vult* together with the judgment of conviction, and subsequently dismissing the indictment. Thus, the action of the state court is concededly valid. That being so, the original judgment is as much a nullity as if the grand jury had never returned an indictment." *Supra* [6] at 37.

The Service says this approach is no help. We quite agree. The statute does not give any specific aid here. The statutory language should not be readily extended, however. We cannot assume that Congress intended that any procedure lying ordinarily within the power of the courts, which a court deems warranted in a particular case, should be nullified if the court's action obstructs the deportation provisions of the statute and is designed solely for that purpose. Statutory deportation provisions should be construed strictly against the Government. Moreover, a court has reversed an attempt by us to disregard judicial action in a case squarely within section 241(b).[9]

### III. Did the trial judge exceed his authority under the state law?

In addition to arguing that there is a controlling federal standard here, the Service again questions the authority of the trial court to grant a new trial and then to dismiss the proceedings on the prosecuting attorney's motion. The motion states that no Michigan authority has been specified as authorizing the procedure in this case, after a conviction and after the sentence had been served. It notes that we commented in our order of January 15, 1963 on this fact, which the Service had brought out at oral argument.

We think the Service's failure to specify any authority which indicates the court exceeded its jurisdiction is more significant. We made a diligent search of Michigan authorities and discovered no indication that the trial judge lacked authority either to grant the motion for new trial or, on motion of the prosecuting attorney, to dismiss the proceedings without holding a new trial. In fact our review of Michigan law indicates that the trial judge here probably acted within his authority.[10] In any event, the court's action may not be held ineffective

---

[9] *Sawkow* v. *Immigration and Naturalization Service, supra.*

[10] Compare *People* v. *Barrows*, 358 Mich. 267, 99 N.W. 2d 347 (1959). The Supreme Court of Michigan reversed an order denying a new trial. The appellant had been originally sentenced on a plea of guilty to three years' probation. Before the probationary period expired appellant was convicted of another offense in New York. (The terms of the Michigan probation provided for appellant to leave Michigan and to reside with his father in New York.) Almost ten years thereafter appellant moved for a new trial in the Michigan proceeding with leave to withdraw his plea of guilty. Appellant was then still serving his New York sentence. Although pointing out that Michigan courts do not look with favor upon long-delayed motions for new trials, the court said that under Michigan law there is no final time limitation upon the power of the trial court to grant a motion for new trial—such motions being within the inherent power of the court where leave to file the motion is first obtained. The court cited *People* v. *Hurwich*, 259 Mich. 361, 243 N.W. 230 (1932), which we cited in our order of January 15, 1963, and *People* v. *Burnstein*, 261 Mich. 534, 246 N.W. 217 (1933).

merely because its authority to so act might be questionable. Lack of jurisdiction must be affirmatively shown. Therefore, the motion also fails because of the Service's failure to show that the trial court exceeded its authority.

## IV.

The further consideration which we have given to this matter in response to the Service motion for reconsideration leads us to deny that motion insofar as it seeks reversal of our order of January 15, 1963 and entry of an order of deportation.

**ORDER:** It is ordered that the motion for reconsideration and withdrawal of our order of January 15, 1963, which approved the decision of the special inquiry officer terminating these proceedings, and for entry of an order of deportation be and hereby is denied.

*It is further ordered* that these proceedings be terminated in accordance with the order of the special inquiry officer, dated July 9, 1962, approved by our order of January 15, 1963.