# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-1852

DETELINA VLADIMIROVA, BISSER VLADIMIROVA
and MONIKA VLADIMIROVA,

*Petitioners,*

*v.*

JOHN D. ASHCROFT, Attorney General
of the United States of America,

*Respondent.*

Petition for Review of Orders of the
Board of Immigration Appeals
Nos. A77-816-315, A77-816-316, A77-816-317

ARGUED MAY 19, 2004—DECIDED JULY 26, 2004

Before CUDAHY, RIPPLE and WILLIAMS, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Petitioner Detelina Vladimirova, her husband, Bisser, and their daughter, Monika, seek review of a decision of the Board of Immigration Appeals (the "BIA") affirming the decision of the Immigration Judge (the "IJ") without opinion and denying their requests for asylum and withholding of removal. Ms. Vladimirova argues that "extraordinary circumstances" excused her failure to file an

application for asylum within one year of her arrival in the United States. We lack jurisdiction to decide that question. We conclude, however, that the IJ failed to consider properly Ms. Vladimirova's request for withholding of removal. Accordingly, for the reasons set forth in the following opinion, we grant the Vladimirovas' petition for review, reverse the judgment of the BIA in part, and remand for further consideration.

# I

## BACKGROUND

### A. Facts

The Vladimirovas are natives and citizens of Bulgaria. Mr. Vladimirova arrived in the United States in April 1997; Ms. Vladimirova and their daughter followed in February 1998. The Vladimirovas allegedly fled Bulgaria to escape the persecution they experienced for practicing the Word of Life religion, a form of Protestantism. Ms. Vladimirova petitioned for asylum in April 1999, including both her husband and their daughter in her petition.

The following account is taken from Ms. Vladimirova's petition for asylum. Ms. Vladimirova and her husband were persecuted for practicing Word of Life from the time they joined the church in 1996. In Bulgaria, all religious groups must be registered with the government; Word of Life's registration had been denied in 1994. Therefore, at the time, practicing the religion was illegal. Ms. Vladimirova's Word of Life group—consisting of herself, her husband, two other individuals, and their pastor—met secretly either in their homes or in remote rural areas. *See* A.R. 279.

In July 1996, Ms. Vladimirova's Word of Life group was conducting services in a remote mountainous region when

four police officers arrived. Ms. Vladimirova detailed that the officers confiscated the worshipers' bibles and Word of Life pamphlets and called the worshipers "filthy sectarians." A.R. 286. The officers then handcuffed all five individuals and took them to a police station, where Ms. Vladimirova and her husband were imprisoned for two nights. During the detention, Bulgarian authorities interrogated her and "physically assaulted" her before releasing her on the third day. A.R. 286. After this incident, the Word of Life group did not meet again until September.

In December 1996, Ms. Vladimirova's Word of Life group was meeting at another member's apartment when police officers arrived at the door. As Ms. Vladimirova described the situation in her application, the officers again seized the members' religious materials and searched the apartment for more evidence of the resident's affiliation with Word of Life. The policemen took Ms. Vladimirova and her husband to the police station. During her detention, the police officers slapped her face and called her "vile names," and one officer threatened to sexually assault her. A.R. 286. After two days, the officers released both her and her husband.

After the December 1996 incident, Ms. Vladimirova and her husband decided to leave the country. Mr. Vladimirova left alone in April 1997, while Ms. Vladimirova remained in Bulgaria because she and her daughter had not yet obtained visas. In her asylum application, Ms. Vladimirova stated that she experienced difficulty with the police again in May 1997. This time, she alleged, police officers arrived at her apartment; the officers slapped her and one of them, not realizing that she was pregnant, hit her in the abdomen with a club, causing a miscarriage. A.R. 287. The officers then left her apartment. As a result of the miscarriage, Ms. Vladimirova related in her petition, she "became very depressed" and at times "did not want to go on living." A.R. 287.

## B.  Administrative Proceedings

The Vladimirovas were placed in removal proceedings in August 1999. At the hearing before the IJ in March 2000, Ms. Vladimirova testified to the facts that we have set forth. She also testified about her fears of what would happen if she were forced to return to Bulgaria. Ms. Vladimirova stated that, although she had not maintained contact with the members of her Word of Life group, other individuals practiced Word of Life in similarly small groups throughout Bulgaria. Ms. Vladimirova explained that, if she returned to Bulgaria, she would attempt to locate a different group with whom she could continue to practice her faith. In response to questioning by the IJ, Ms. Vladimirova explained that, if she returned to Bulgaria, she could not avoid harassment simply by moving to a different area of the country because Bulgarians are required to register their address with the police within forty-eight hours of an address change.

At the hearing, the Government's attorney sought further information about Ms. Vladimirova's current religious practice. Ms. Vladimirova stated that, in the United States, she and her family attended the First Baptist Church. Ms. Vladimirova explained that she could not find a Word of Life church in Illinois and that the Baptist church was similar to the Word of Life church.

After hearing the testimony and reviewing the submitted documentation, the IJ concluded that Ms. Vladimirova had not shown extraordinary circumstances sufficient to excuse her failure to petition for asylum within one year of her arrival in the United States. Nevertheless, the IJ considered Ms. Vladimirova's asylum claim. The IJ did not credit explicitly Ms. Vladimirova's testimony about the harassment she experienced in Bulgaria, but he implicitly did so, stating that Ms. Vladimirova had been "mistreated" by the Bulgarian authorities but concluding that the harassment

had not risen to the level of persecution required to be eligible for asylum under 8 U.S.C. § 1101(a)(42)(A). A.R. 86. The IJ reasoned that persecution is "generally considered to be a threat to the life or freedom of the victim," and that Ms. Vladimirova's "mistreatment" had not threatened her life or freedom. A.R. 85-86.

The IJ relied upon three cases to support his conclusion that the harassment Ms. Vladimirova suffered was insufficient to establish a claim of asylum. He relied upon our opinion in *Zalega v. INS*, 916 F.2d 1257 (7th Cir. 1990), for the proposition that there is no persecution if a petitioner is "held only briefly and detained and then released, and never . . . formally charged for any crime and not mistreated during his incarceration." A.R. 85-86. The IJ also referenced the BIA's opinion in *Matter of Chen*, 20 I. & N. Dec. 16 (BIA 1989), contrasting the "prolonged mistreatment" the petitioner in that case suffered for his religious beliefs with the absence of any "severe" mistreatment in the present case. A.R. 86. Finally, the IJ discussed our opinion in *Asani v. INS*, 154 F.3d 719 (7th Cir. 1998), and concluded that in *Asani* the petitioner had suffered a "higher" level of mistreatment than Ms. Vladimirova because he was "chained to a radiator and his teeth were knocked out." A.R. 86. The IJ characterized *Asani* as holding that the petitioner did not "experience[ ] past persecution, but that the mistreatment at least should have been considered in assessing whether there was any reasonable possibility of future mistreatment." A.R. 86. Since the petitioner in *Asani* had not suffered past persecution, the IJ concluded, neither had Ms. Vladimirova.

The IJ went on to decide that, even if Ms. Vladimirova had shown past persecution, her asylum claim would still fail because she had no reason to fear further mistreatment upon returning to Bulgaria. After reviewing the 2000 Department of State Report on International Religious Freedom in

Bulgaria, the IJ noted that the Bulgarian government supported the Eastern Orthodox Church but permitted many other groups, including Roman Catholics, Jews and Muslims, to practice freely their religion. The IJ stated that evangelical Protestants also were permitted to practice freely, although they were prohibited from proselytizing. The IJ noted that there was no mention of the Word of Life church in the report. The IJ relied on our opinion in *Gramatikov v. INS,* 128 F.3d 619 (7th Cir. 1997), to support his decision to consider State Department reports as equivalent to an expert opinion entitled to "substantial weight" and to require that a petitioner contradict the information in a report with "highly credible and independent sources of expert knowledge." A.R. 87.

The IJ concluded that the State Department's "assessment of conditions in Bulgaria are not nearly as threatening" as Ms. Vladimirova suggested and that there was no reasonable possibility that Ms. Vladimirova would experience future persecution in Bulgaria:

> If in fact the respondent's problem in Bulgaria in '86 [sic] and '97 was on account of police, particular police misbehavior, then I would think that she should move to another area. She has not adequately explained why she could not do so. Clearly, she has not shown that the religious practice of the Word of Life Church extends to other area [sic] of the country. In fact, she is a member of a congregation in the United States which is not of that Protestant group.

A.R. 87-88. Further, the IJ reasoned, because there was "no clear probability of persecution," the Vladimirovas were not entitled to withholding of removal. A.R. 88.[1]

The BIA summarily affirmed the IJ's decision, stating: "The Board affirms, without opinion, the results of the decision below. The decision below is, therefore, the final agency determination. *See* 8 C.F.R. § 3.1(a)(7)." A.R. 3. Ms. Vladimirova filed a timely petition for review in this court.

## II

## ANALYSIS

### A. Standard of Review

Under the Immigration and Nationality Act, an alien can remain in the United States if she fears persecution in her native country either by petitioning for asylum or by applying for withholding of removal. To be eligible for asylum, however, an alien must file her petition within one year of her arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). An alien's failure to file a timely application for asylum will be excused only if the applicant can show "either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing." *Id.* § 1158(a)(2)(D). An alien who did not file in a timely manner and who has shown neither "changed circumstances" nor "extraordinary circum-

---

[1] The IJ also denied Ms. Vladimirova's request for relief under the Convention Against Torture, 8 C.F.R. §§ 208.16(c) and 208.18(b)(2), but Ms. Vladimirova does not raise that issue in this review. *See Robin v. Espo Eng'g Corp.,* 200 F.3d 1081, 1088 (7th Cir. 2000) (claims not raised on appeal are abandoned).

stances," however, still may be eligible for withholding of removal. *See* 8 C.F.R. § 208.3(b).

To obtain asylum, an alien must show that she cannot return to her native country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). If the alien can establish that she suffered past persecution, then she is entitled to a "rebuttable presumption" that she has a "well-founded fear of future persecution" and so should be granted asylum. *Yadegar-Sargis v. INS,* 297 F.3d 596, 601 (7th Cir. 2002); *see* 8 C.F.R. § 208.13(b)(1). The Government can rebut that presumption by showing either that there has been a "fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution" in her native country or that the alien "could avoid future persecution by relocating to another part" of the country. 8 C.F.R. § 208.13(b)(1)(i)(A) & (B).

To be eligible for withholding of removal, an alien must establish that "it is more likely than not" that she again will be persecuted if forced to return to her native country. *INS v. Stevic,* 467 U.S. 407, 429-30 (1984); *see* 8 U.S.C. § 1231(b)(3); *Ahmad v. INS,* 163 F.3d 457, 460 (7th Cir. 1999). If she can establish that she suffered past persecution, she is entitled to a presumption that her "life or freedom would be threatened in the future" in her native country. 8 C.F.R. § 208.16(b)(1)(i). The Government can rebut that presumption by showing either that there has been a "fundamental change in circumstances such that the applicant's life or freedom would not be threatened" upon return or that the alien "could avoid a future threat to his or her life or freedom" by relocating to another part of the country. *Id.* § 208.16(b)(1)(i)(A) & (B). An applicant who cannot meet the burden of showing a well-founded fear of persecution to

prove eligibility for asylum necessarily fails to meet the higher burden of showing the probability of persecution required to qualify for withholding of removal. *See Ahmad*, 163 F.3d at 463.

Where, as here, the BIA summarily affirms without opinion, we review the decision of the IJ. *See Ememe v. Ashcroft*, 358 F.3d 446, 450 (7th Cir. 2004). We shall affirm the IJ's decision if it is supported by substantial evidence. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992); *Ememe*, 358 F.3d at 451.

## B. Asylum

Ms. Vladimirova asks us to review the IJ's conclusion that she did not show "extraordinary circumstances" sufficient to excuse her failure to file a timely petition for asylum. 8 U.S.C. § 1158(a)(2)(D). The Government argues, however, that this court lacks jurisdiction to review the denial of her petition for asylum, and, at oral argument, Ms. Vladimirova agreed. In a companion case also decided today, we join our sister circuits in concluding that the plain language of § 1158(a)(3)—"[n]o court shall have jurisdiction to review any determination of the Attorney General under paragraph [(a)(2)]"—bars judicial review of the BIA's denial of asylum under § 1158(a)(2)(D). *See Zaidi v. Ashcroft*, No. 03-3062, slip op. at 4-5 (7th Cir. July 26, 2004); *see also Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003); *Castellano-Chacon v. INS*, 341 F.3d 533, 544 (6th Cir. 2003); *Tarrawally v. Ashcroft*, 338 F.3d 180, 185 (3d Cir. 2003); *Tsevegmid v. Ashcroft*, 336 F.3d 1231, 1235 (10th Cir. 2003); *Fahim v. United States Attorney Gen.*, 278 F.3d 1216, 1218 (11th Cir. 2002); *Hakeem v. INS*, 273 F.3d 812, 815 (9th Cir. 2001); *Ismailov v. Reno*, 263 F.3d 851, 855 (8th Cir. 2001).

### C. Withholding of Removal

Ms. Vladimirova also argues that she is entitled to with-holding of removal. Section 1158(a)(3) does not bar our review of the IJ's denial of that relief. *See Tarrawally*, 338 F.3d at 185-86. The IJ assessed only Ms. Vladimirova's claim for asylum, however, and concluded that she did not qualify for withholding of removal because she had not met the lesser burden of proving her eligibility for asylum.

Ms. Vladimirova submits that the IJ did not evaluate her eligibility for asylum under the proper standard and that, accordingly, we should grant her petition for review to allow the IJ to reconsider her eligibility for withholding of removal. Ms. Vladimirova contends that in her testimony she demonstrated that she had experienced persecution in Bulgaria when she was beaten so severely as to cause a miscarriage. Because the IJ did not discredit that testimony, she argues, she should have been afforded the benefit of the rebuttable presumption of a future threat, as directed by 8 C.F.R. § 208.16(b)(1)(i). Ms. Vladimirova submits that the Government did not present evidence sufficient to rebut that presumption. She also challenges the IJ's conclusions that Protestants can now practice freely in Bulgaria and that, even if some persecution remains, she could avoid it by returning to a different area of Bulgaria. Ms. Vladimirova points out that the same government remains in power and that religious intolerance continues unabated. Finally, she points out that the State Department's failure to mention Word of Life in the 2000 Report on International Religious Freedom in Bulgaria is likely because the church is so small, not because church members are no longer persecuted.

We agree that the IJ failed to analyze properly whether Ms. Vladimirova suffered past persecution and thus failed to afford her the benefit of the shifting burden of proof. The IJ's statement that conduct must involve a "threat to the life

or freedom of the victim," A.R. 85, is simply wrong. Indeed, we recently emphasized in *Dandan v. Ashcroft*, 339 F.3d 567 (7th Cir. 2003), that acts of persecution must " 'rise above the level of mere harassment' " but need not be so severe as to constitute " 'threats to life or freedom.' " *Id.* at 573 (quoting *Ambati v. Reno*, 233 F.3d 1054, 1060 (7th Cir. 2000)). The physical violence suffered by the petitioner—a beating so severe that it caused a miscarriage—certainly rises above the level of mere harassment and qualifies as proof of past persecution. *See, e.g., Kossov v. INS*, 132 F.3d 405, 409 (7th Cir. 1998) (Rovner, J., concurring) (opining that beating resulting in miscarriage could justify finding of past persecution). *Compare Asani v. INS*, 154 F.3d 719, 723 (7th Cir. 1998) (remanding to BIA to reconsider whether a detention involving the deprivation of sufficient food and water and a beating resulting in the loss of two teeth constituted past persecution), *and Vaduva v. INS*, 131 F.3d 689, 690 (7th Cir. 1997) (determining that a beating in which petitioner was punched and had his face bruised and his finger broken constituted past persecution), *with Dandan*, 339 F.3d at 573-74 (concluding that petitioner's three-day detention and beating resulting in a "swollen" face did not constitute past persecution where petitioner did not provide specific details to indicate the severity of the beating), *and Skalak v. INS*, 944 F.2d 364, 365 (7th Cir. 1991) (determining that two three-day detentions involving interrogation but no injury did not constitute past persecution).

Moreover, the cases upon which the IJ relied in concluding that Ms. Vladimirova did not suffer persecution in Bulgaria are inapposite. The first case upon which the IJ relied, *Zalega v. INS*, 916 F.2d 1257 (7th Cir. 1990), has no bearing on Ms. Vladimirova's petition. In *Zalega*, we approved the BIA's denial of asylum because the petitioner, although incarcerated, experienced no mistreatment, *see* 916 F.2d at 1260; Ms. Vladimirova was beaten so severely as to cause a miscar-

riage. The IJ relied on *Matter of Chen,* 20 I. & N. Dec. 16 (BIA 1989), but that case involved a different standard than the one relevant to a petition for asylum. In *Chen,* the BIA expressly granted Chen's petition on "humanitarian" grounds after finding that he had not proven his status as a refugee but statutorily was eligible for asylum "in the exercise of discretion." *Id.* at 20-21. Finally, the IJ compared the persecution of Ms. Vladimirova to that of the petitioner in *Asani.* In *Asani,* however, we reversed the BIA's denial of asylum because the BIA had applied an incorrect standard. *See Asani,* 154 F.3d at 723. Moreover, in doing so, we questioned "the BIA's conclusion that the harm Asani suffered did not cause 'serious injuries,'" when he was deprived of sufficient food and water and had his teeth knocked out during a beating. *Id.* Thus, the IJ critically mis-stepped and mis-stated this court's decision when he suggested that the "higher" level of mistreatment in *Asani* did not constitute persecution. As a result, the IJ's analysis of Ms. Vladimirova's claim was fatally flawed. In sum, because the IJ credited Ms. Vladimirova's testimony but failed to recognize that she had suffered persecution, Ms. Vladimirova never received the benefit of the presumption of a future threat that the Government bears the burden of rebutting. *See* 8 C.F.R. § 208.16(b)(1)(i).

Further, the IJ did not believe Ms. Vladimirova's statement that she could not avoid persecution in Bulgaria by relocating to another part of the country, but the 2000 Department of State Report on International Religious Freedom in Bulgaria (the "2000 Report") makes clear that harassment of those practicing unsanctioned religions is spread throughout the country. In any event, the 2000 Report—which states in part that the Government restricts the practice of some religions that are not registered—hardly demonstrates that individuals of Ms. Vladimirova's religious beliefs are free from persecution. The fact that

Word of Life was not mentioned in the report and that Ms. Vladimirova worshiped with only a small group does not imply that the religion does not exist or is not persecuted; the report discusses only the experiences of Muslims, Jews, Roman Catholics, Jehovah's Witnesses and Mormons. There is no evidence in the 2000 Report that Word of Life has been registered with the Bulgarian Government and that its adherents may practice freely. Ms. Vladimirova's decision to worship with a "mainline" denomination in this country is equally irrelevant; her reasons for not worshiping with other Word of Life members reflect a practical adjustment, given her inability to locate a Word of Life group where she lives in this country.

### Conclusion

We lack jurisdiction to review the IJ's denial of the Vladimirovas' petition for asylum. When the IJ assessed Ms. Vladimirova's claims, however, he failed to recognize that Ms. Vladimirova suffered past persecution. Accordingly, he did not grant her the benefit of the presumption that she would be subject to a future threat. We remand to the Department of Homeland Security to reconsider the Vladimirovas' requests for withholding of removal. Ms. Vladimirova may recover her costs in this court.

PETITION DISMISSED IN PART
AND GRANTED IN PART; REMANDED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*