# In the

# United States Court of Appeals

## For the Seventh Circuit

————————

Nos. 02-3761 & 03-3112

MIRWAIS ALI,

*Petitioner*,

v.

JOHN D. ASHCROFT, Attorney General
of the United States,[1]

*Respondent.*

————————

Petitions for Review of Orders of
the Board of Immigration Appeals.
No. A25-355-167

————————

ARGUED FEBRUARY 25, 2004—DECIDED JANUARY 11, 2005

————————

Before EASTERBROOK, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Mirwais Ali, a native and citizen of Afghanistan, came to the United States at the age of three. At eighteen, Ali had several encounters with the law

---

[1] We substitute Attorney General John Ashcroft as the proper respondent to the petition in case no. 02-3761. *See* 8 U.S.C. § 1252(b)(3)(A). Case number 03-3112 correctly listed John Ashcroft as the Respondent.

resulting in three state convictions, which triggered removal proceedings by the immigration authorities. For the reasons discussed below we find that the Child Citizenship Act of 2000 does not apply retrospectively and thus does not provide Ali any relief. We also find that although Ali's felony conviction was vacated and reduced to a misdemeanor by the Wisconsin state courts, it was reasonable for the Board of Immigration Appeals ("BIA") to hold that Ali's vacated felony remains a felony for immigration purposes. Also, we conclude that the BIA's denial of Ali's Convention Against Torture ("CAT") claim was supported by substantial evidence. Finally, we find that Ali has no liberty or property interest in the discretionary relief he sought—in this case cancellation of removal. Therefore we lack jurisdiction to review his due process claim. Thus, we affirm the Immigration Judge's citizenship determination, the BIA's Convention Against Torture determination, and the BIA's denial of Ali's motion to reconsider. And we dismiss Ali's withholding of removal claim for lack of jurisdiction.

## I. BACKGROUND

Ali was born in Afghanistan in 1979, immigrated with his parents to the United States at the age of three, and was granted lawful permanent resident status on March 1, 1982. Ali's mother became a U.S. citizen in 1991, when Ali was still a minor. Since 1982, Ali has resided in the United States and has not left the country. He does not speak any of the native languages of Afghanistan nor does he have any family or friends there.

As a teenager, Ali was convicted of various offenses in Wisconsin state court: receiving stolen property (1997), possession with intent to distribute tetrahydrocannabinol ("THC"), the active ingredient in marijuana (1998), and receiving stolen property (2000). Following these convictions, what was then the Immigration and Naturalization Service

("INS") initiated removal proceedings against Ali. In his Notice to Appear, the INS claimed Ali was removable under the Immigration and Nationality Act ("INA"), for having been convicted, after admission to the United States, of: (1) an aggravated felony relating to illicit trafficking of a controlled substance; (2) a controlled substance offense "other than a single offense involving possession of one's own use of 30 grams or less of marijuana"; and (3) "two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct." He was taken into INS custody in November 2001 and has remained in detention since that time.

Ali made several claims to defeat removal. On May 16, 2002, the Immigration Judge ("IJ") denied all of Ali's applications for relief, making the following findings: (1) he was not a U.S. citizen under the Child Citizenship Act of 2000 ("CCA"); (2) having been convicted of an aggravated felony, possession with intent to distribute THC, he was statutorily ineligible for cancellation of removal; (3) he was also statutorily ineligible for asylum because his felony conviction constitutes a "particularly serious crime"; (4) his conviction for a particularly serious crime also precluded his eligibility for withholding of removal; and (5) he had not made out a claim for relief under CAT. Finding that Ali failed to designate a country of removal, the IJ ordered Ali removed to Afghanistan. The IJ also stated that if the Wisconsin state court would vacate or modify Ali's felony drug conviction to the misdemeanor of mere possession, Ali could avoid removal by filing a motion to reopen consideration of his case to apply for cancellation of removal. The BIA affirmed the IJ's decision without opinion on September 27, 2002.

On March 7, 2003, the Dane County Circuit Court of Wisconsin entered an order amending Ali's felony conviction of possession with intent to deliver THC to "simple misdemeanor Possession of THC." On May 2, 2003, Ali filed with

the BIA a motion to reopen his removal proceedings to present a cancellation of removal claim based upon the Wisconsin state court's amendment of his conviction. On May 21, 2003, the BIA denied Ali's motion as untimely. On June 12, 2003, Ali filed a motion to reconsider the Board's May 21 decision. On July 28, 2003, the BIA denied the motion for reconsideration, applying its June 11, 2003 ruling in *Matter of Pickering*, 23 I. & N. Dec. 621 (BIA 2003) to conclude that, despite the modification of his sentence to a misdemeanor, Ali remained convicted of an aggravated felony for immigration purposes and was statutorily ineligible to apply for cancellation from removal. Ali now appeals the following decisions: (1) the IJ's citizenship determination under the CCA, affirmed by the BIA without opinion; (2) the IJ's denial (also affirmed by the BIA without opinion) of Ali's petition for withholding of removal and his claim for relief under CAT; and (3) the BIA's denial of Ali's motion to reconsider.

## II.  ANALYSIS

### A.  Child Citizenship Act of 2000

Ali claims that he cannot be removed from the United States because he is a U.S. citizen under the Child Citizenship Act of 2000, Pub. L. No. 106-395, § 101(a), 114 Stat. 1631 (2000), *codified at* 8 U.S.C. § 1431(a). We must decide the nationality claim when no "genuine issue of material fact about the petitioner's nationality is presented." 8 U.S.C. § 1252(b)(5)(A); *Gomez-Diaz v. Ashcroft*, 324 F.3d 913, 915 (7th Cir. 2003). We review legal issues presented in such claims de novo but defer to the BIA's factual findings, reversing them only if they lack the support of substantial evidence in the record. *Gomez-Diaz,* 324 F.3d at 915. Because the BIA affirmed the IJ's citizenship determination without opinion, the IJ's opinion becomes the basis of our review. *Vladimirova v. Ashcroft*, 377 F.3d 690, 695 (7th Cir. 2004); *Ememe v. Ashcroft*, 358 F.3d 446, 450 (7th Cir. 2004).

The CCA changed the way in which children of non-American citizens born outside the United States become eligible for citizenship. It amended § 320 of the INA and grants automatic American citizenship to children who are born outside of the United States when the following three conditions have been met: (1) at least one parent of the child is a citizen of the United States, whether by birth or naturalization; (2) the child is under the age of eighteen years; and (3) the child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence. 8 U.S.C. § 1431(a).

Section 104 of the new law provides that this amendment "shall take effect 120 days after the date of the enactment of this Act and shall apply to individuals who satisfy the requirements of section 320 . . . of the Immigration and Nationality Act, as in effect on such effective date." Pub. L. No. 106-395, Title I, § 104, 114 Stat. 1633 (2000). As the CCA was signed by the President on October 30, 2000, the amendments became effective on February 27, 2001. We have construed the CCA not to apply retrospectively, *see Dave v. Ashcroft*, 363 F.3d 649, 654 (7th Cir. 2004); *Gomez-Diaz*, 324 F.3d at 916. The BIA and other circuits have also construed the CCA in this fashion. *See, e.g., In Re Rodriguez-Tejedor*, 23 I. & N. Dec. 153 (BIA 2001); *Drakes v. Ashcroft*, 323 F.3d 189, 191 (2d Cir. 2003). Therefore, even though Ali's mother is a U.S. citizen, Ali does not qualify for automatic citizenship under the CCA because he was over the age of eighteen on February 27, 2001, the CCA's effective date. *Dave*, 363 F.3d at 654; *Gomez-Diaz,* 324 F.3d at 916. The CCA thus does not protect Ali against removal.

## B.  Withholding of Removal

Ali also seeks review of his denied withholding of removal claim. As indicated in his Notice to Appear, Ali was deemed

removable under the INA for having been convicted, after admission to the United States, of an aggravated felony. Specifically, Ali was convicted of a felony relating to the illicit trafficking of a controlled substance under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii); a controlled substance offense under INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i); and two crimes involving moral turpitude not arising out a single scheme of criminal misconduct under INA § 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii).

Before we may review the BIA's denial of Ali's request for withholding of removal, however, we must first determine whether we have jurisdiction to do so. Section 1252(a)(2)(C) of Title 8 of the United States Code strips us of jurisdiction to review a final order of removal against an alien who is removable by virtue of having committed certain criminal offenses. However, that provision does not bar our jurisdiction to determine our jurisdiction. We also have jurisdiction to determine whether an alien "is being removed for a permissible reason." *Bosede v. Ashcroft*, 309 F.3d 441, 445 (7th Cir. 2002). *See also Sandoval v. INS*, 240 F.3d 577, 580 (7th Cir. 2001). Therefore, we first examine Ali's criminal offenses. Second, we analyze whether the criminal offenses preclude Ali's statutory eligibility for withholding of removal.

As the BIA affirmed the IJ decision without opinion, we review the IJ's ruling denying Ali withholding of removal as the final agency decision. *Vladimirova*, 377 F.3d at 695. We review the IJ decision under the substantial evidence standard, which requires us to affirm the decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Ememe*, 358 F.3d at 450-51. The IJ found that Ali's Wisconsin conviction for possession with intent to distribute THC constituted "illicit trafficking in a controlled substance" or a "drug trafficking crime." Consequently, the IJ regarded Ali as an "aggravated felon" which under 8 U.S.C. § 1227(a)(2)(A)(iii)

rendered him deportable. Ali claims that he is no longer an aggravated felon, because Wisconsin amended his conviction from a felony to a simple misdemeanor. However, after Ali's later appeal to the BIA on a motion to reconsider (which we will discuss in a moment), the Board concluded in its July 28, 2003 opinion that although Wisconsin modified Ali's conviction from a felony of possession with intent to distribute THC to a misdemeanor for simple possession of THC, Ali remained convicted of an aggravated felony for immigration purposes. The BIA relied on *Matter of Pickering*, 23 I. & N. Dec. 621 for its decision. In *Pickering*, the BIA ruled that if a court vacates an alien's conviction for reasons solely related to rehabilitation or immigration hardships, as opposed to responding to procedural or substantive defects in the underlying criminal proceedings, then the alien remains "convicted" for immigration purposes. *Id.* at 624.

While we give deference to the BIA's interpretation of the statutes it administers, *Marquez v. I.N.S.*, 105 F.3d 374, 378 (7th Cir. 1997) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984)), we apply de novo review to the legal question of whether Ali's criminal acts constitute an aggravated felony under federal law. *Guerrero-Perez v. I.N.S.*, 242 F.3d 727, 730 (7th Cir. 2001). Title 8 U.S.C. § 1101(a)(43)(B) includes in its definition of aggravated felony "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." Section 924(c) of Title 18 of the United States Code in turn defines "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 *et seq.*). . . ." 18 U.S.C. § 924(c)(2). Thus, a state conviction for possession of a controlled substance with intent to deliver is both a drug trafficking crime and an aggravated felony under the INA if it is punishable under the Controlled Substances Act ("CSA") and qualifies as a felony. The CSA regards THC as a controlled substance, 21

U.S.C. § 812, Schedule I subsection (c)(17), and clearly prohibits its possession with the intent to distribute. *See* 8 U.S.C. § 841(a).

We now turn to whether possession with intent to deliver THC is a felony under federal law. The CSA defines "felony" as "any Federal or State offense classified by applicable Federal or State law as a felony." 21 U.S.C. § 802(13); *see also* 21 U.S.C. § 802(44) (defining "felony drug offense" as "an offense punishable by imprisonment for more than one year under any law of the United States or of a State . . . that prohibits or restricts conduct relating to narcotic drugs, marihuana, or depressant or stimulant substances"). Pursuant to a plea of *nolo contendere*, Ali was convicted of possession of 200 grams or less of THC with intent to deliver, in violation of Wisconsin Statute § 961.41(1m)(h)(1). A violation of this statute is a Class I felony under Wisconsin law. Because of Ali's prior conviction for receiving stolen property in violation of Wisconsin Statute § 943.34(1)(a), Ali was eligible for an enhanced sentence of not more than three years under Wisconsin Statute § 939.62(1)(a) as a repeat offender. Therefore, Ali's Wisconsin conviction for possession with intent to deliver fits the federal definition for a drug trafficking crime and aggravated felony.

There still remains the question of what effect Wisconsin's amendment of Ali's felony conviction should have on his immigration status. As resolution of this question involves our review of the BIA's interpretation of the statutes it administers, under *Chevron*, we must first determine whether Congress has spoken directly on the issue before us, and if so, whether congressional intent on that issue is clear. 467 U.S. at 842. In *Pickering*, the BIA interpreted the INA's definition of "convicted," which the INA defines as follows:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court, or if adjudication has been withheld,

> where—. . . (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and (ii) the judge has ordered some form of punishment, penalty, or restraint on the liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A). The parties have not directed us to a federal statute describing the effect a conviction modified to avoid immigration hardships should have on deportation proceedings, nor have we identified any on our own; therefore, we must determine whether the "agency's answer is based on a permissible construction of the statute," *id.* at 843, remembering that "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency," *id.* at 844.[2] We agree with the holdings of several of our sister circuits on this issue and consequently do not find the BIA's reading of 8 U.S.C. § 1101(a)(48)(A) to be unreasonable. *See Renteria-Gonzales v. I.N.S.*, 322 F.3d 804, 812-13 (5th Cir. 2002) (holding that a vacated federal conviction remained valid for immigration purposes);[3] *Beltran-Leon v. I.N.S.*, 134

---

[2] Recall that *Pickering* held that if a court vacates an alien's conviction for rehabilitation purposes or to avoid deportation, the alien remains convicted for immigration purposes.

[3] In his concurrence in *Renteria-Gonzalez*, Judge Benavides noted that applying the majority's holding to federal and state convictions vacated on the merits, such as for insufficient evidence or a guilty plea made involuntarily, would result in a perverse outcome. *Renteria-Gonzalez*, 322 F.3d at 822. *See also Discipio v. Ashcroft*, 369 F.3d 472, 473-75 (5th Cir. 2004). As Ali's state conviction was not vacated because it was procedurally or substantively defective, we only cite *Renteria-Gonzalez* for the narrower proposition that convictions vacated simply to avoid deportation remain valid convictions for immigration purposes.

(continued...)

F.3d 1379, 1380-81 (9th Cir. 1998) (holding that a state conviction vacated solely to avoid deportation and the subsequent hardship to alien's family remained a conviction for deportation purposes); *Zaitona v. I.N.S.*, 9 F.3d 432, 436-37 (6th Cir. 1993) (finding a federal conviction vacated to avoid deportation would not be recognized for immigration purposes). *See also Gill v. Ashcroft*, 335 F.3d 574, 578 (7th Cir. 2003) (finding a state conviction dismissed pursuant to state rehabilitative statutory scheme, and not because of any procedural or substantive defect in the conviction, remained a conviction for immigration purposes).

As the BIA's reading of 8 U.S.C. § 1101(a)(48)(A) is not unreasonable, we must defer to it, *Guerrero-Perez*, 242 F.3d at 730; *Marquez*, 105 F.3d at 378, as we have done elsewhere, *see, e.g.*, *Sandoval*, 240 F.3d at 584 (relying on BIA rulings *Matter of Kaneda*, 16 I. & N. Dec. 677 (BIA 1979) and *Matter of O'Sullivan*, 10 I. & N. Dec. 320, Interim Decision, 1963 WL 12324 (BIA 1963) to hold that an alien whose conviction had been modified because of ineffective assistance of counsel at the plea stage did not remain convicted for immigration purposes).

The BIA's *Pickering* decision is fatal to Ali's request for relief from removal. Ali's conviction satisfies the two prongs of the federal definition of conviction as outlined in 8 U.S.C. § 1101(a)(48)(A). The two prongs within 8 U.S.C. § 1101(a)(48)(A) are: (1) that Ali entered a guilty or *nolo contendere* plea; and (2) that the judge ordered some form of punishment. Ali pleaded no contest to the possession of

---

[3] (...continued)

Citing *Renteria- Gonzalez* for the broader proposition that a conviction vacated for any reason, including a procedural or substantive defect, remains a conviction under immigration law would run counter to our opinion in *Sandoval. See* discussion *infra* pp. 17-18.

THC with intent to deliver charge. In addition, Ali was sentenced to three years probation and a three-month suspension of his license.

In their stipulated motion to amend Ali's conviction, the Wisconsin district attorney and Ali's counsel made explicit their ultimate aim: "[b]y amending the felony conviction to that of a misdemeanor, the defendant would avert his pending deportation from the United States of America." It was upon this stipulated motion that the Dane County Circuit Court issued its order amending Ali's conviction to simple misdemeanor possession of THC. It is therefore, obvious that Ali's conviction was amended simply to avoid deportation. On these facts and under the BIA's decision in *Pickering*, Ali remains convicted of an aggravated felony for immigration purposes.[4]

Ali points to *Sandoval* in an attempt to support his argument that this court should consider only his modified conviction for misdemeanor possession of THC when eval-

---

[4] Ali attempts to distinguish his case from *Pickering* by emphasizing the difference between a vacatur of a conviction, which *Pickering* addressed, and an amendment or modification of the same, which Ali's case involves. However, Ali's argument fails. Title 8 U.S.C. § 1227(a)(2)(B)(i) provides that "[a]ny alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable." As Ali was convicted at some point in time of a violation that involved more than the mere possession of 30 grams or less of marijuana for his personal use, this provision simply reaffirms the result here. On these facts, it would not make much sense for Ali, whose conviction was modified to avoid deportation, to fare better than the applicant in *Pickering* whose conviction was outright quashed for the same purpose.

uating his immigration status. However, that case is readily distinguishable. The petitioner in *Sandoval* presented a cognizable ineffective assistance of counsel claim. This ineffective assistance of counsel claim effectively questioned the voluntariness of Sandoval's guilty plea. Here, there is no procedural or substantive defect in Ali's conviction. Therefore, *Sandoval* does not apply to Ali.[5]

Even though Ali remains convicted of an aggravated felony for immigration purposes, his removal from the United States is not automatic as he may be saved by withholding of removal. We have jurisdiction to determine whether the BIA properly found a criminal alien ineligible for withholding of removal. *Bosede*, 309 F.3d at 445-46. Withholding of removal is governed by statute, 8 U.S.C. § 1231(b)(3)(A).[6] This relief is not discretionary. If an alien meets the statutory criteria, the Attorney General must withhold removal.

---

[5]  Ali highlights the following language in *Sandoval*: "even if the state court judge's decision to modify Sandoval's sentence was motivated by the consequences of the federal immigration law, that fact would not render the modification [of his sentence] ineffective for immigration purposes." 240 F.3d at 583. We cited the BIA's decisions in *Kaneda*, 16 I. & N. Dec. 677, and *O'Sullivan*, 10 I. & N. Dec. 320, Interim Decision, 1963 WL 12324, as the basis of that proposition. *Id*. However, the BIA in *O'Sullivan* declined to find that the conviction was vacated (by an order for a new trial) solely to avoid deportation. 10 I. & N. Dec. at 330. In addition, *Kaneda* involved an expungement of a state conviction according to terms analogous to the federal First Offender Statute and not just to avoid deportation. 16 I. & N. Dec. at 678-80. In addition to the cases on which the quoted statement is premised being distinguishable from the case at bar, *Sandoval* was decided before *Pickering* was decided.

[6]  The relevant language of that statute provides: "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."

*I.N.S. v. Aguirre-Aguirre,* 526 U.S. 415, 420 (1999). How-ever, the statutory entitlement is limited by 8 U.S.C. § 1231(b)(3)(B)(ii), which excepts from relief aliens who have been "convicted by a final judgment of a particularly serious crime."

The IJ in this case found that Ali's conviction was for a "particularly serious crime." This finding rendered Ali stat-utorily ineligible for withholding of removal. The IJ based his conclusion on Ali's felony conviction of possession with intent to distribute THC. The IJ construed the conviction as a drug trafficking offense, which under the IJ's application of *Matter of Y-L-, A-G-, R-S-R-,* 23 I. & N. Dec. 270 (BIA 2002), presumptively constitutes a "particularly serious crime." *See also* 8 C.F.R. § 208.16(d)(3) ("[I]t shall be presumed that an alien convicted of an aggravated felony has been convicted of a particularly serious crime."). While *Matter of Y-L-* allows a deportable alien to rebut that pre-sumption by showing "the most extenuating circumstances that are both extraordinary and compelling," 23 I. & N. Dec. at 270, the IJ noted that Ali did not present any testimonial or documentary evidence to rebut this presumption.

Ali now responds that he is no longer convicted of a "par-ticularly serious crime," as his felony conviction was amended to misdemeanor possession. Ali also argues that even as-suming, *arguendo*, that if his felony conviction remained for immigration purposes, he could rebut the presumption that this felony conviction was for a "particularly serious crime."

We have already concluded Ali's first argument has no merit. As to the question of whether Ali has rebutted the presumption that his conviction was for a "particularly serious crime," we find he has not exhausted his admin-istrative remedies on this point. Ali has not presented his arguments to the BIA, and we cannot review these argu-ments now in the first instance. *Bosede,* 309 F.3d at 448; *Singh v. Reno,* 182 F.3d 504, 511 (7th Cir. 1999). Therefore,

we must dismiss this portion of Ali's petition for lack of jurisdiction. 8 U.S.C. § 1252(d).

## C.   Convention Against Torture ("CAT")

Despite his felony conviction, Ali can obtain protection from deportation under the CAT. That treaty, adopted as federal law by section 2242(a) of the Foreign Affairs Reform and Restructuring Act of 1988, 8 U.S.C. § 1231, forbids de-porting an alien to "a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." The implementing regulation defines "substantial grounds for believing the person would be in danger of being subjected to torture" as meaning that the alien "is more likely than not to be tortured in the country of removal." 8 C.F.R. § 208.16(c)(4).

The IJ concluded that Ali failed to establish that he would most likely be tortured if returned to Afghanistan. As the BIA summarily affirmed the IJ's decision without opinion, we review the IJ's decision. *Vladimirova*, 377 F.3d at 695. We apply the substantial evidence standard, that is, we determine whether the final agency decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole, and reverse only if the evidence compels a contrary conclusion." *Ahmed v. Ashcroft*, 348 F.3d 611, 615 (7th Cir. 2003) (internal citations omit-ted).

To support his CAT claim, Ali, in addition to documentary evidence, relied on his own testimony and that of Mohammad Basheer. Basheer is an educator originally from Afghanistan who has been employed at the University of Nebraska in Omaha since 1988. Ali testified before the IJ that he feared removal to Afghanistan because he has been in the United States since age three and, for all intents and purposes, is American. Ali argued that Afghanistan is essentially unknown to him. Ali stated that he does not

speak, read or write Farsi with any fluency. Ali also contended that he has no family or friends in Afghanistan. Ali also expressed concern over the declining health of his parents, who live in the United States. Basheer testified that in his opinion both government and non-governmental forces will view Ali, with his American disposition and upbringing, as suspicious and possibly a spy. As such, Basheer concluded, Ali is vulnerable to government-sanctioned torture. However, the IJ did not give Basheer's testimony much weight, noting that the testimony was not corroborated in any way. Further, Basheer admitted that he had not conducted research on torture in Afghanistan since December of 2001.

We are sympathetic to Ali's situation. We recognize that being deported to a country that one does not know and that has been ravaged by war and political instability is understandably a source of fear. Nonetheless, the law compels us to reach this result. On this administrative record, we cannot conclude that the IJ's denial of CAT relief was not supported by substantial evidence.

### D. Motion to Reconsider Motion to Reopen Removal Proceedings

Finally, Ali seeks review of the BIA's denial of his request to reconsider his denied motion to reopen so that Ali could present a cancellation of removal claim. We review motions to reconsider under the highly deferential abuse of discretion standard. 8 C.F.R. § 1003.2(a); *Dandan v. Ashcroft,* 339 F.3d 567, 575 (7th Cir. 2003). A motion to reconsider "shall state the reasons for the motion by specifying the errors of fact or law in the prior Board decision and shall be supported by pertinent authority." 8 C.F.R. § 1003.2(b)(1).

Ali based his motion to reconsider on his claim that his conviction, reduced from a felony to a misdemeanor, made him statutorily eligible for cancellation for removal. The BIA based its denial of Ali's motion on its *Pickering* decision,

which holds that an alien remains convicted of a felony for immigration purposes if his conviction is vacated solely to avoid deportation or for rehabilitation purposes. As such, Ali's motion, based on his modified state conviction, would not have made him eligible for the ultimate relief he sought in his motion to reconsider, namely cancellation of removal. *See* 8 U.S.C. § 1229b(a)(3) (rendering aliens convicted of any aggravated felony statutorily ineligible for cancellation of removal). Ineligible for cancellation of removal, the BIA did not abuse its discretion when it denied Ali's motion to reconsider.

Ali also claims that the BIA violated his due process rights when it applied *Pickering*, and in doing so, parted with its precedent that allowed vacated criminal convictions to prevent removal. Generally, we cannot consider constitutional claims made on a direct review petition, unless the claims raise "substantial" constitutional issues.[7] *Bosede*, 309 F.3d at 446; *Dave*, 363 F.3d at 652. Even if we were to view Ali's claim as raising substantial constitutional issues which we could review to "prevent bizarre miscarriages of justice," *Lara-Ruiz v. I.N.S.*, 241 F.3d 934, 939 (7th Cir. 2001), Ali has not presented a valid due process claim. To make such a claim, he would have to show that he has a liberty or property interest in the outcome of the proceedings. *Dave*, 363 F.3d at 653; *see also Dandan*, 339 F.3d at 575. However, an alien cannot have a liberty or property interest in what is discretionary relief, *Dave*, 363 F.3d at 653, and the denial of such relief does not implicate due process, *id.*; *Dandan*, 339 F.3d at 575-76. Ali seeks review of his denied motion to reconsider so that he can present a motion to reopen his removal proceedings and ultimately obtain cancellation of removal. Cancellation of removal, the ultimate relief he seeks, is a form of discretionary relief.

---

[7] Although the court can review some constitutional claims if Ali were to bring a petition for *habeas corpus* under 8 U.S.C. § 2241.

*Lemus-Rodriguez v. Ashcroft*, 350 F.3d 652, 653 (7th Cir. 2003); *Gill*, 335 F.3d at 575.

Therefore, Ali has no liberty or property interest in the relief he seeks, and we lack jurisdiction to review his due process claim. This is especially true where 8 U.S.C. § 1252(a)(2)(B)(i) strips us of jurisdiction to review denials of discretionary relief, including cancellation of removal.

### III.  CONCLUSION

For the reasons stated above, we must AFFIRM the IJ's findings that Ali is not a U.S. citizen and that he is not eligible for relief under the Convention Against Torture, AFFIRM the BIA's denial of Ali's motion to reconsider its denial of his motion to reopen removal proceedings, and DISMISS Ali's withholding of removal claim for lack of jurisdiction.

A true Copy:

      Teste:

                _____
                *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*