**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 18, 2006
Decided April 25, 2006

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-2733

| | |
|---|---|
| CHUN LIN ZHAO,<br>*Petitioner*,<br><br>*v.*<br><br>ALBERTO R. GONZALES, Attorney General<br>of the United States<br>*Respondent*. | Petition for Review of an Order<br>of the Board of Immigration<br>Appeals<br><br><br>No. A77 651 202 |

**ORDER**

Chun Lin Zhao, a Chinese citizen, petitions for review of the Board of

Immigration Appeals' decision affirming the Immigration Judge's denial of his

application for asylum, withholding of removal, and relief under the Convention

Against Torture. Because the BIA found that Zhao's asylum application was

untimely, we do not have jurisdiction to consider Zhao's arguments about his

asylum claim. We also deny Zhao's petition with respect to his claims for withholding of removal and relief under the Convention Against Torture because the evidence does not compel a conclusion that it is more likely than not that Zhao will be persecuted on account of a protected ground or will be tortured if he returns to China.

Zhao asserts that he has suffered persecution on account of his political opinion based on events that happened when he was the "director" of the security department at the Li He Trading Company in Shenyang, China. The owner of the company, Zhi Jun Huang, was a Falun Gong practitioner. Although Zhao testified that he is not himself a Falun Gong practitioner, he says that he supported Huang's efforts to practice Falun Gong and suggested that Huang hold early morning group practice sessions in the company's courtyard. Zhao provided security for these sessions, which in time grew to include more than 100 people.

According to Zhao, these practice sessions attracted the attention of Chinese authorities, and in 1999 several officials from the public security bureau tried to enter the courtyard where a session was taking place. Zhao and some fellow security guards stopped the officials from entering. Zhao says a scuffle ensued, after which the officials accused him of serving as a "protection umbrella" for the group and warning him that if the Falun Gong practitioners were ever put on trial, he would be the "first person . . . to be tried." About a month later, officials forcibly took Zhao from work to the local public security bureau office. They asked him to monitor Huang's activities and plant a bugging device on the premises of the

company. When Zhao refused, the officials handcuffed him to a pipe and slapped him on the face, drawing blood. Zhao also said that they "cut some lines" on his back with a knife. He testified that one cut was "pretty deep" but the others were "not that much." The officials released him after several hours and told him to report to them periodically on Huang's activities. Zhao says he made one such report in which he falsely said that Huang had not participated in any political activities. Zhao, concerned that his continued refusal to cooperate with authorities placed him in danger, left China for the United States. Huang has since dissolved the Li He Trading Company and has also left China.

The IJ found that Zhao was ineligible for asylum because he filed his application more than a year after entering the United States and that no changed circumstances in China justified the delay. The IJ also denied Zhao's claims for withholding of removal and relief under the Convention Against Torture. She determined that Zhao was not persecuted on account of his political opinion but was targeted solely because officials thought he would be a useful source of information on Huang. The IJ also determined that the treatment Zhao suffered during his questioning (being handcuffed, slapped, and cut with a knife) was not severe enough qualify as persecution; she noted that Zhao's written application never mentioned being cut with a knife, and that Zhao himself testified that he did not think the knife cut was "a big thing." Finally, she concluded that Zhao failed to show that it was likely that he would be persecuted or tortured after returning to China because he is not a Falun Gong practitioner and the government's only

interest in him—as a source of information on Huang—no longer existed because Huang left the country and closed his company. The BIA adopted the IJ's decision. The BIA agreed with the IJ's analysis of all of Zhao's claims, although it added that Zhao was not entitled to relief under the Convention Against Torture because he had not shown that the treatment he endured was sufficiently severe to constitute torture.

Zhao concedes that he did not file his asylum application within the one-year deadline, but he argues that this delay was justified because the Falun Gong was not officially declared illegal until 2002. This event, he says, is a changed country condition which justifies his late filing under 8 U.S.C. § 1158(a)(2)(D) because it increased the risk that he would be targeted by the Chinese government. However, the BIA rejected Zhao's changed country conditions argument and, as the government points out, we do not have jurisdiction to review a determination that an asylum application is untimely and that a delay in filing is not justified. 8 U.S.C. § 1158(a)(3); *Lhanzom v. Gonzales*, 430 F.3d 833, 841–42 (7th Cir. 2005); *Vladimirova v. Ashcroft*, 377 F.3d 690, 695 (7th Cir. 2004); *Zaidi v. Ashcroft*, 377 F.3d 678, 680–81 (7th Cir. 2004). Therefore, we lack jurisdiction to review Zhao's arguments regarding his asylum claim.

The one-year deadline does not apply to applications for withholding of removal or relief under the Convention Against Torture, so we may review Zhao's arguments regarding those claims. *Lhanzom*, 430 F.3d at 842. To qualify for withholding of removal Zhao must show that his "life or freedom would be

threatened" on account of his political opinion, 8 U.S.C. § 1231(b)(3)(A); *Firmansjah v. Gonzales*, 424 F.3d 598, 604–05 (7th Cir. 2005). This is a higher burden than the asylum standard, *Kobugabe v. Gonzales*, 440 F.3d 900 (7th Cir. 2006), and we review the BIA's determination on this issue for substantial evidence, *Firmansjah*, 424 F.3d. at 604.

Although Zhao does not explicitly say so, he seems to be making an argument that the public security officials imputed a political opinion to him based on his connection to Huang's Falun Gong activities. Zhao argues that the BIA and IJ erred in finding that he did not express a political opinion and that the treatment he suffered was based on his relationship with Huang. Zhao asserts that the mistreatment he suffered "was based on his providing cover for Falun Gong practitioners and his refusal to cooperate with authorities." Zhao also argues that he "expressed his political opinion by his act of providing protection to the former student leader and the other Falun Gong practitioners and by his refusal to cooperate with the government authorities in its endeavor to persecute the student leader and the Falun Gong practitioners."

To succeed on a claim of imputed political opinion, Zhao must show that his persecutors attributed a political opinion to him, *Lwin v. INS*, 144 F.3d 505, 509 (7th Cir. 1998), and that this attributed opinion is their motive for harming him, *see INS v. Elias Zacarias*, 502 U.S. 478, 482–83 (1992). We have suggested that individuals can establish a claim of imputed political opinion if they show a risk of persecution at the hands of authorities who erroneously believe they are Falun

Gong practitioners. *See Liu v. Ashcroft*, 380 F.3d 307, 314–15 (7th Cir. 2004). Other courts have also taken the position that imputed support of Falun Gong can be the basis of a claim of persecution on account of political opinion. *Zhou v. Gonzales*, 437 F.3d 860, 868–69 (9th Cir. 2006); *Gao v. Gonzales*, 424 F.3d 122, 129–30 (2d Cir. 2005).

The problem is that Zhao has provided little evidence to suggest that the public security bureau officials really believed him to be a Falun Gong practitioner or were motivated by this consideration. The main incident of alleged persecution identified by Zhao in his brief is his interrogation and beating at the public security bureau office. But, as both the IJ and the BIA pointed out, the interrogation of Zhao focused primarily on what he could tell them about Huang's activities rather than on his own behavior or views about Falun Gong. This evidence is consistent with the BIA's and IJ's conclusion that Zhao was mistreated because he refused to be an informant rather than because he was viewed as a Falun Gong practitioner. *See Lwin*, 144 F.3d at 509 (no persecution on account of imputed political opinion where petitioner was pressured to reveal whereabouts of his politically active son; interrogations focused on son's whereabouts not petitioner's views of son's political opinions). The fact that public security bureau officials wanted Zhao to inform on Huang does not necessarily show that they thought Zhao shared Huang's views. Zhao's position as security "director" would make him valuable as an informant regardless of his personal opinions about Falun Gong. Since Zhao has not shown

that the officials who interrogated and assaulted him were motivated by a belief that he was a Falun Gong practitioner, his withholding claim must fail.

There is a possibility that Zhao is also making a vague argument that he was mistreated on account of his own, rather than an imputed, political opinion. He seems to suggest that his refusal to cooperate with the authorities by becoming an informant was itself an expression of a political opinion. Perhaps he is saying that his refusal was intended as a political statement that he supported Falun Gong and opposed the intolerant and oppressive tactics of the Chinese government.

We have defined a political opinion as "one that is expressed through political activities or through some sort of speech in the political arena." *Li v. Gonzales*, 416 F.3d 681, 685 (7th Cir. 2005). It is not obvious that the mere refusal to cooperate with government officials and inform on one's boss (unaccompanied by any other evidence of political activism) falls within this definition. Zhao does not cite any case law to support such an argument, and the case law we have found does not tend to support it. For example, we have refused to find that petitioners have been persecuted on account of their political opinion in situations where they have been mistreated by the government for refusing to disclose the whereabouts of a politically active family member. *See Djouma v. Gonzales*, 429 F.3d 685, 688 (7th Cir. 2005); *Lwin v. INS*, 144 F.3d at 509 (7th Cir. 1998). Therefore, this undeveloped argument is without merit.

There is another problem with Zhao's petition. As the government points out, he has hardly presented a clear cut case of past persecution. Although Zhao points

to his detention during which he was handcuffed to a pipe, slapped, and cut with a knife—serious allegations that are more specific than the vague claims of "beatings" that this court generally rejects, *see, e.g., Dandan v. Ashcroft*, 339 F.3d 567, 573–74 (7th Cir. 2003)—he himself admitted that he did not think this incident was "a big thing," a statement that undermines what is already a questionable case of persecution.

Without any evidence of past persecution, Zhao has presented little to challenge the BIA's conclusion that he does not face a clear probability of harm in the future, if he goes back to China. On this point, Zhao basically repeats arguments that the BIA rejected. For example, he says that he will be harmed if he returns because he refused to continue making the periodic reports on Huang to the public security bureau. Zhao also says that, after he left China, Chinese officials came twice to the Li He Trading Company to look for him and this is evidence that they are still interested in harming him. However, both of these arguments ignore the crucial fact that Huang is no longer in China. The officials' visits to Zhao's office both occurred before Huang dissolved his company and left the country, when Zhao still would have been of some use to the authorities as an informant. Now that Huang is gone, Zhao does not explain why the authorities would still be interested in him. Zhao seems to think that he will be punished for his past failure to make reports on Huang, but he does not provide any specifics about why he thinks this will happen and given the high standard he has to meet to prove his

eligibility for withholding or removal, this argument does not justify overturning the BIA's decision.

Zhao's claim for relief under the Convention Against Torture fails for similar reasons. To be eligible for relief under the Convention Against Torture, Zhao must show that it is more likely than not that he will be tortured if he returns to China. 8 C.F.R. § 1208.16(c)(2); *Mabasa v. Gonzales*, 440 F.3d 902, 907 (7th Cir. 2006). Since Zhao's evidence that he will face harm in the future is irrelevant now that Huang has left China, he cannot meet this standard. In any event, torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . ." 8 C.F.R. § 1208.18(a)(1); *Rashiah v. Ashcroft*, 388 F.3d 1126, 1131 (7th Cir. 2004). Zhao does not point to any evidence that would indicate he would suffer such severe treatment if he returns to China.

For the above reasons, we DISMISS for lack of jurisdiction Zhao's petition to the extent that it seeks review of the BIA's decision denying him asylum and DENY the petition in all other respects.